## UNITED STATES *v.* WILSON.

*(District Court, D. Colorado.  January 15, 1891.)*

UTTERING COUNTERFEIT MONEY—WHAT CONSTITUTES—CONFEDERATE MONEY.

The putting off a note of the late Confederate States of America as lawful money upon an ignorant man, in the night-time, is not the offense contemplated by Rev. St. U. S. § 5415, punishing the passing, uttering, or publishing of any note in imitation of the circulating notes "issued by the banking associations acting under the laws of the United States, " and it is not indictable thereunder.

On motion to Quash Indictment.
*J. D. Fleming,* U. S. Atty.
*David Plessner,* for the prisoner.

HALLETT, J., (*orally.*) The indictment against Wilson is for passing a counterfeit note, under section 5415, Rev. St. It appears in the indictment that the note passed was a Confederate States note, "payable two years after the ratification of a treaty of peace between the Confederate States and the United States," and it bore some general resemblance to the treasury notes and national bank notes of the United States. It is said that it was put off upon an ignorant man, in the night-time, and without much examination on his part. The question which arises upon this motion is whether this can be called a counterfeit note, as having any likeness or similitude to the treasury notes and bank notes in general circulation; and I am of opinion that it cannot be recognized as having that character. The statute is:

"Every person who falsely makes, forges, or counterfeits," etc., "any note in imitation of or purporting to be in imitation of the circulating notes issued by the banking associations now or hereafter authorized or acting under the laws of the United States, or who passes, utters, or publishes, or attempts to pass, utter, or publish, any such note of the associations doing a banking business, knowing the same to be falsely made, forged, or counterfeited, and who falsely alters," etc., "any such circulating note,"

—shall be punished as prescribed in the statute. It is only necessary to say that the offense defined in this section, and in other sections which have been referred to in argument upon this motion, is that of passing, uttering, or publishing any counterfeit note. The note must purport to be issued by such an association doing a banking business. This, so far as disclosed, was not a counterfeit note at all. It was a genuine note; that is to say, it was a genuine note of the Confederate States of America, and therefore it was not counterfeit in the sense of this statute or of any statute. And then it was not on its face, or in any way, a note of any national bank, or of the United States. There were no words to make it such. The counterfeit referred to in the statute must, at all events, have a greater resemblance to the current money of the United States than to anything else. This note, in the size and shape and color, and in the denomination of the figures upon it, has some resemblance to current notes in circulation as money; but that is not enough to make it a counterfeit of the circulating notes of the United States. The offense which this man committed in putting out this note was recognized at the common law as cheating, and it has been under consideration in the other case, which was decided this morning. The offense was that of cheating, and it was by a false symbol or token. The token was the note, and the putting it off upon another as money was the precise offense of cheating at the common law. It was imposing upon another, inducing him to believe that the paper which was offered him was in fact money when it was not. Here is a section of Bishop's Criminal Law, vol. 2, § 435, in which a case very analogous to this is referred to:

"This doctrine has been carried so far in England that, where a man passed out to another person for change a bank-note, saying it was for five pounds, when really it was, as he knew, for only one pound, and received the change as for a five-pound note, he was held to have committed this offense, though

the person to whom he passed the note could read. Said Lord CAMPBELL, C. J.: 'We are all of opinion that the conviction was right. In many cases a person giving change would not look at the note; but being told it was a five-pound note, and asked for change, would believe the statement of the party offering the note, and change it. Then if, giving faith to the false representation, the change is given, the money is obtained by false pretenses.'"

That is this case exactly. This defendant offered the prosecuting witness the Confederate note as money. He made him believe it was money, and got change from him upon that understanding, and thereby cheated and defrauded the prosecuting witness of the money. This offense may be prosecuted under the statute of the state, if the state authorities are inclined to pursue it; and we will turn over the defendant to the state authorities if they want him for that purpose.