THE PEOPLE, PLAINTIFF AND APPELLANT, v. FAJARDO,
DEFENDANT AND RESPONDENT.

APPEAL from the District Court of Mayagüez in a Prosecution
for Violation of the Internal Revenue Law.

MOTION by respondent to join and dismiss two appeals, etc.

No. 132.—Decided December 4, 1914.

APPEAL—JOINDER OF APPEALS—WITHDRAWAL OF APPEAL.—A pending appeal can-
not be joined with another which has been withdrawn by the appellant when
the respondent in both cases who applies for such joinder has taken no steps
to reinstate the appeal withdrawn.

INTERNAL REVENUE—UNLAWFUL REMOVAL OF ALCOHOL—INFORMATION.—When in
the case of an alleged violation of the Internal Revenue Act the original
information charges that a certain quantity of alcohol was removed from a
distillery without the payment of the internal revenue tax and the amended
information alleges that the accused defrauded The People of Porto Rico of
the amount of the internal revenue tax on a specified quantity of alcohol by
failing to pay said tax at the time required by law and in the manner pro-
vided for by the regulations promulgated by the Treasurer of Porto Rico,
setting out also in detail the acts, means, and manner by which the said
fraud was committed, although the second information only states more clearly
and precisely the offense charged in the original information and although the
latter may be, perhaps, sufficient to support a conviction for the offense
charged in the amended information, it is not necessarily true that such
amended information is "the same thing stated in more words."

JUDICIAL NOTICE.—As a general rule courts will not take judicial notice on their
own motion of the record of another different case, although it may be related
to the case at bar.

EVIDENCE—REFERENCE TO FACTS PROVED IN ANOTHER CASE.—As there is not the
slightest indication in the record of this case of any admission, stipulation,
or proof tending to suggest to the lower court that the evidence in this case
would be a simple repetition of that introduced in another former case, said
court cannot take it for granted that this may be true, nor can it be pre-
sumed that the court did so, especially when in giving its reasons for adopting
the opinion delivered in the former case as grounds for the order made in
this case the court stated that "the facts on which the said ruling in that
case was based are identical with the facts alleged in the present information,
with the exception of the dates on which the acts are alleged to have been
committed, as to which there is a difference."

SETTING ASIDE INFORMATION—DISMISSAL OF ACTION—CONSTRUCTION OF DECIS-
ION.—The dispositive part of the decision appealed from, based upon an

opinion delivered in another former case which was made a part of the said decision in view of the supposed identity of the facts alleged in the amended information with the facts proved in the former case, reads as follows: " * * * that the facts stated in the information do not constitute an offense against the laws of Porto Rico, therefore the court rules that the said information should be, and hereby is, set aside (*desestimar*) and the same should be pigeonholed (*archivar*) and dismissed (*sobreseer*)." It was held that what the court found, as is shown on the face of the said decision, was that the facts alleged in the amended complaint did not constitute an offense against the laws of Porto Rico and that what the court did was to set aside the said amended information, and that the decision appealed from, liberally construed, amounts to a judgment in favor of the accused on the court's own motion in the nature of a demurrer, and that by no means can the said decision be construed as a dismissal of the action in furtherance of justice under section 451 of the Code of Criminal Procedure.

INFORMATION—JUSTIFICATION OR EXCUSE—LEGAL BAR.—After considering the amended information it was held that the facts alleged constitute a public offense and that the information contains nothing which, if true, would constitute a justification or legal excuse for the offense charged or a legal bar to the action.

APPEAL—JUDGMENT ON PLEADINGS.—After examining the decision appealed from in the light of the attendant circumstances of the case it was held that whether considered as an order setting aside the information on the ground that the facts alleged did not constitute an offense, or as a judgment in favor of the accused on the court's own motion in the nature of a demurrer, the said decision is appealable under section 348 of the Code of Criminal Procedure, and that as the lower court committed error it should be reversed.

The facts are stated in the opinion.

Messrs. *Wolcott H. Pitkin, Jr.,* Attorney General, *Salvador Mestre, fiscal,* and *Robert Szold* for The People.

Messrs. *Willis Sweet* and *Benjamin J. Horton* for the defendant.

MR. JUSTICE HUTCHISON delivered the opinion of the court.

On August 11, 1914, an information was filed in the District Court of Mayagüez charging the appellee herein with the violation of the internal revenue laws, as follows:

"That on or about February 18, 1914, the said Mateo Fajardo Cardona unlawfully and wilfully removed, or allowed to be removed, a certain quantity of alcohol from his distillery situated near the village of Hormigueros and within the jurisdiction of the District Court of the Judicial District of Mayagüez, P. R., without paying the internal revenue tax exacted by law on said alcohol."

This information, upon leave and after motion and argument, was amended to charge the facts as follows:

"That on February 18, 1914, the said Mateo Fajardo Cardona, as owner of the distillery called 'Eureka' situated in the municipal district of Hormigueros, within the jurisdiction of the District Court of the Judicial District of Mayagüez, P. R., having distilled a large quantity of alcoholic spirits in his said distillery, illegally and maliciously defrauded The People of Porto Rico of the amount, of the excise taxes on 500 liters of alcohol, more or less, in failing to pay the tax prescribed by law upon said alcoholic spirits within the time prescribed by law and in the form provided by the regulations promulgated by the Treasurer of Porto Rico on July 1, 1911, a copy of which regulations is attached and made a part of this information; that said quantity of alcoholic spirits was then and there extracted by Félix Vázquez, by order and direction, and obeying the urging of said Mateo Fajardo Cardona, who then and there illegally failed to pay the internal revenue tax which it was his duty to pay prior to the removal from his factory of said quantity of alcoholic spirits, in failing to purchase, affix and cancel on the corresponding invoice internal revenue stamps in accordance with the provisions in the above-mentioned regulations of the Treasurer prior to removing from his said distillery the said quantity of alcohol, the said quantity of alcohol not having been exempted by the Treasurer of Porto Rico from the payment of the excise tax due in accordance with the provisions of the law; and that prior to the said 18th day of February, and at the date, time, and place mentioned, the said Félix Vázquez was acting in his character of internal revenue agent, duly appointed, and under the instructions of his superiors to investigate innumerable frauds which were being and had been committed against the internal revenue laws; and that prior to February 18, 1914, the said accused, Mateo Fajardo Cardona, insisted and solicited Félix Vázquez to permit him to withdraw alcohol from his distillery without paying the tax prescribed by law, and the said Félix Vázquez feigned to acquiesce in the request and proposition of the accused and acted at the time and place above mentioned with the purpose of obtaining evidence in order to prosecute criminally the accused for violation of the law which the accused had himself proposed and wished to violate, and which he did violate, as has been set out in this information."

A motion to strike certain parts of the amended information from the record was filed and the court thereafter, with-

out decision of the questions thus raised and of its own motion, undertook to dispose of the amended information.

The minutes of October 2 show the following entry:

"On this 2d day of October, 1914, the court holds, on the grounds stated in the written decision included in the record, that the facts alleged in the amended information do not constitute an offense against the laws of Porto Rico, and therefore rules that it must set aside, as it does set aside, the said information, which should be filed away and dismissed ('*y por tanto ordena que se debe desestimar como desestima la citada acusación la que debe ser archivada y sobreseída*')."

The order actually signed by the district judge reads:

"On this day, October 2, 1914, after an examination of the motion by counsel for the accused, Mateo Fajardo, to strike out certain allegations which appear in the amended information filed by The People of Porto Rico and admitted by this court, the court considers that it is unnecessary to discuss the said motion for the reason that after a careful study of the amended information the court deems that the facts stated therein do not constitute a public crime, in accordance with the opinion delivered by this court on September 26, 1914, in Case No. 2815—*People of Porto Rico* v. *Mateo Fajardo Cardona*—for violation of the Internal Revenue Law, taking into consideration that the facts on which the said ruling in that case was based are identical with the facts alleged in the present information, with the exception of the dates on which it is alleged that the acts were committed, as to which there is a difference.

"For the reasons stated, this court holds that the facts set forth in the information do not constitute a crime against the laws of Porto Rico and therefore rules that it must set aside, as it does set aside, the said information, which should be filed away and dismissed ('*y por tanto ordena que se debe desestimar como desestima la citada acusación la que debe ser archivada y sobreseída*')."

The opinion of September 26 referred to and made a part of such ruling is in part as follows:

"The court renders its decision on the two motions of merger and nonsuit presented by the accused yesterday.

"The court has examined carefully the numerous authorities cited by both parties during the discussion of these two motions and has consulted also all the jurisprudence pertinent to the questions raised to be found in the library of this court, so far as the judge has had time to do so.

. "The court finds that, distinguishing the cases, the jurisprudence is not in conflict with respect to the principal question which was presented and discussed by Judge Sweet. The courts are in accord with respect to the principle of criminal law that means employed in the investigation and discovery of a crime do not constitute a defense which the accused may plead, but when means are employed to stimulate or solicit the commission of a crime this relieves him from all criminal responsibility.

"The facts in this case, as they appear from the testimony of witness Vázquez, internal revenue agent, are that he came to Mayagüez a short time before the act was committed for the purpose of investigating various cases here and also of discharging his duties as internal revenue agent; that on one occasion the accused offered him a bribe to permit him to withdraw alcohol fraudulently from the storehouse of the distillery 'Eureka' which he owns, of which he informed his superiors and received instructions from them to permit the accused to commit violations of the internal revenue law, to receive the bribe from him and afterwards to swear out a complaint, and that on the day alleged in the information he permitted the withdrawal from the storehouse of the distillery of the accused of 500 liters of alcohol without the corresponding stamps, and that later on the same day he received from the accused the sum of $100. The testimony of agent Vázquez shows that he furnished the opportunity to the accused to commit the crime, that he lent his aid, *without which the crime could never have been consummated,* and he did it with the intention of catching him red-handed and denouncing him in the courts. The act of consenting to the opening of the storehouse was a stimulus to the accused in the commission of the fraud. It is true that the proposal to commit the fraud originated with the accused, that Vázquez at the outset did not instigate Fajardo to commit the crime but acted in accordance with instructions to catch him in the act if possible, and his action in making it possible to extract the alcohol was the same as if he had instigated it. In order to commit the criminal act Vázquez had to perform an act contrary to law in opening the faucet of the tank and permitting the withdrawal of the alcohol without cancelling the required internal revenue stamps.

"In the case of *Saunders* v. *People,* 38 Mich., 213, cited in *Connor* v. *People,* 25 L. R. A., 347 and 348, a conviction in the court below of burglary was reversed. The accused was a lawyer interested in obtaining possession of certain bonds which were filed in a court, and requested a guard or employee of the court named Webb to leave the door of the court house open so that he might enter and carry away the said bonds. After consulting his superior chief, Webb consented to the proposal and left the door of the court house open, but prepared everything to catch the burglar, and one Moylan was actually surprised in the act of taking out the documents. The Supreme Court of Michigan held that the accused could not be found guilty on this evidence.

"The court considers the above case of great weight, not only for the reasons given in the opinion, but also for the high respectability of the judges who composed said court, one of them being Judge Cooley, one of the most notable jurists in the history of the judiciary of the United States.

\* \* \* \* \* \* \*

"The same doctrine is laid down in the cases of *Connor* v. *People,* 25 L. R. A., 341; *United States* v. *Adams,* 59 Fed., 674; *State* v. *Dudoussat,* 47 La. Ann., 977, 995, 996, 997.

"Among the cases cited by the *fiscal* there are several which refer to the sale of liquors in violation of law, the passing of counterfeit money and the use of the mails for illegal purposes. These are cases in which the means employed by the agents of the Government have for an object the discovery of persons engaging in illegal business and obtaining evidence of crimes being committed, and they are sustained by the courts.

"The *fiscal* also cited a case recently decided by the Supreme Court of Texas, *Minter* v. *State,* 159 S. W., 286. This case refers to the sale of liquors prohibited by law and deals with two policemen who were on duty in a town in the state of Texas and were bribed by a person to permit him to engage in the business of the illegal sale of liquors. But it seems that there was not evidence sufficient to support an information and obtain a conviction for the crime of bribery, and in order to obtain this evidence a trap was set to catch the accused with the desired result, and in this manner the necessary evidence was secured and the court held that the conviction was legal. The *fiscal* considers this case like the present one because in the Texas case the policeman did not solicit a bribe but the offer came from

the accused, just as in the Fajardo case. The court understands that the two cases are very distinct. In the Texas case the consummation of the crime of bribery did not depend upon the will of the policemen, and, further, the crime of bribery had already been committed. The bribe had already been offered to the policeman. In the present case the intention of the accused is not important; the plan which he had formed would miscarry if the revenue agent complied with his duty; the accused could have attempted and formed his plans for defrauding the Treasury of Porto Rico for an indefinite time, but without the slightest hope of realizing it while the agent complied with his duty of not opening the tank. The accused could have desired to withdraw alcohol from the tank without paying the tax but what he desired and may have had the intention of doing was impossible unless Vázquez, the agent, lent his aid. When the defendant made the proposal to the agent to give him money to violate the law the crime of bribery was committed (for the purposes of this motion the court has to give entire credit to the testimony of witness Vázquez), but he did not commit any crime against the internal revenue law in offering this bribe and it was not necessary to permit the removal of alcohol from the tank in order to obtain evidence of the violation of the said law already committed or which it was feared would be committed. For the purposes of a prosecution for the crime of bribery the means employed were justified, in which case the case of *Minter* v. *State,* cited by the *fiscal,* would be applicable. But because the means employed for obtaining evidence of the crime of bribery were justified it does not follow that they are justified for the prosecution of a violation of the internal revenue law, the aim in this information.

"Before concluding the court wishes to refer to the case of *Grimm* v. *United States,* 156 U. S., 604, 39 L. Ed., 555. In the opinion in that case crimes of robbing the mails are referred to; of the theft of letters containing money and articles of value, which crimes are generally committed by the employees of the postoffice. In order to discover these crimes and to obtain evidence it is the practice of the postoffice inspectors to deposit in the mail letters containing marked bank notes and afterwards to keep watch and surprise the persons who extract said letters from the mail-matter. The court criticises such procedure but concludes by upholding it solely by reason of the necessity of the case. In the present case there is no such necessity because no one can withdraw alcohol from the tank of a distillery unless he is in collusion with the internal revenue agent. If the information were against an internal revenue agent and the

trap had been prepared in order to catch him, then it might be argued that the court should sustain such measures on account of the necessity of the case.

''The court affirms that when the commission of a crime by a person depends absolutely upon the act of another person who is an agent of the Government and this latter consents to its commission with the intention of denouncing the former criminally, the law does not permit that the act so committed be considered as a public crime.

''The facts in the present case are distinct from those of any of the cases which the court has examined but in none does there exist greater reason for the application of the rule, and the court, being of the opinion that the defendant is relieved of criminal responsibility under the information and considering the evidence insufficient to sustain the allegations of the information, orders his acquittal.''

On November 12 appellee filed a motion in this court setting forth that the defendant, on September 24, was tried upon one of four informations, all charging the same offense, in the same language, differing only in the dates alleged as to the time of the commission of the several criminal acts; that two of such informations had been disposed of by the district court, appeals having been perfected in both cases, one having been dismissed upon motion for nonsuit after hearing the evidence, the same being the case in which the opinion of September 26 was filed, the other being the case at bar; that the grounds upon which the district court dismissed the second information appear in the record of the appeal now before this court, but that the evidence upon which the judgment of the court was based is not present, and upon these facts moved for an order of this court directing counsel for appellant to submit the record on the appeal from the judgment of the court in Case No. 733, including the evidence, or a proper statement upon which the district court, in fact, dismissed both informations; that the hearing on the two appeals be consolidated; that a time be set for hearing the same and that counsel for appellee be permitted to file one brief covering the issues involved in the two appeals; that both appeals be dismissed because of the failure

of the appellant to comply with section 356 of the Code of Criminal Procedure, which requires the appellant in all criminal cases to bring up to this court a statement of the case, and that the hearing on No. 732 (this case) set for November 19, be suspended and that the same be reset for a hearing on the consolidated appeal at such time as the court might deem fit.

After the filing of this motion and before the date set for the hearing thereof, the appeal in the case sought to be consolidated herewith was dismissed upon motion of the *fiscal.* No effort was made by counsel for appellee to have the same reinstated. It is quite clear that the present appeal cannot be consolidated with a case not before this court.

We quote from the written argument of the appellee enough to show, in a general way, the proposition urged by counsel:

"In the present appeal the State may return to the district court with its decision reversing the cause now pending, and say to the district judge: 'You have been reversed and we now call up the two remaining informations, which are just the same as those upon which the State lost, and with the same facts ask for a conviction.' It is easy to see how the power of the Supreme Court would be invoked to influence, or better, dominate a result in the lower court without having passed upon anything but a hypothetical case, without dealing with the only actual case upon which the district court acted.

"In concluding its opinion in the case tried the court said: 'And considering the evidence insufficient to sustain the allegations of the accusation, it orders the acquittal of the defendant.'

"Upon what ground did the court hold the evidence insufficient? Upon the ground of the 'trap' feature of the case alone? We do not know. We contended in the argument of the motion that, entirely independent of this phase of the case, the evidence was insufficient to convict the accused and that it did not sustain the accusation. We still believe this and believe that this court will take the same view of the case.

"If this should be true, then why should the defendant be subjected to the prejudice of a reversal without even a hearing of the case that is actually on trial here?

"Furthermore, and to make this suggestion more forceful, note the beginning of the opinion or judgment of the district court. Please observe the range of questions and issues that rest upon the evidence and proceedings in the causes really testing the points raised in this court.

"The peculiar questions involved in this appeal—the appeal that should be heard—cannot be settled by this court, in our humble opinion, without having before it the facts to which to apply the law.

"We do not intend to attempt to distinguish cases, principles or the facts involved, in this argument. We could not properly do so if we desired; and yet, the court is asked to assume a position that shall commit this court and this people, one way or the other, on the distinctions that have been drawn by many of the ablest courts of the nation, including the Supreme Court of the United States.

    ＊       ＊       ＊       ＊       ＊       ＊       ＊

"Everything; precedent, name, family, fortune, the personal rights of men, are to be disposed of on the unproved allegations of an accusation made on hearsay.

    ＊       ＊       ＊       ＊       ＊       ＊       ＊

"In dismissing the cause now before the court the district judge was acting upon the main fact upon which the four informations were based. With full knowledge of the main fact, which no subtlety could change, the fact upon which the law must be applied in all of these cases, and after a careful study of the 'trap' cases, as the opinion will disclose, the court dismissed the other misdemeanor—the one pending here. From that judgment of dismissal this appeal was brought.

"The trap feature of the case, which involves the law and the facts in the matter at bar, we shall not discuss because the facts are not here. Officials of the Government may trap people into the commission of crimes for sufficient or insufficient reasons, but we decline to be trapped into the discussion of a question, that of all questions must rest upon facts, without a fact present.

"It is true that counsel state that the facts are set forth in the information. The facts alleged may be, but not the facts proved; and if it be urged that the case tried had nothing to do with this case, then why is the opinion of the court in the first case brought here?

"We answer the question: It is here because the opinion in the first case was the basis of the dismissal of the second case; and the

facts involved in the first case, upon which that opinion rests, are not here; and this course was taken by the judge of his own motion because he knew, and counsel for both sides well knew, that the facts—the essential facts—are the same in all of these misdemeanor cases.

"After careful consideration, counsel for appellee have concluded that they cannot, in justice to the court, their client, and themselves, go into a discussion of the conduct of the revenue agent and the position in which he was placed by the law as the result of his acts. The general question has been widely discussed by the courts, and although many different views have been expressed, yet the lines are fairly well distinguished. However, your honors will at once recognize that each case must have rested upon its own peculiar facts. How, then, may we study, and ask your honors to apply, the law to the facts in this case? We may present the distinctions made by the different courts and the subject might be interesting. But of what avail would it be to your honors in a decision that must place this court in line with the other authorities dealing with the same subject?

"We are presented here with an information which also purports—so counsel say—to be a statement of the facts.

"There is no certificate beyond that of stating that the information now under consideration contains the same statement of facts that was contained in the information under which the appellee was tried and acquitted. But there is no certificate as to the facts elicited at the trial of the cause upon which the opinion rests.

"What, then, is the purpose of this appeal? It is to avoid the actual issue and obtain a decision that may be used with which to meet the immediate necessities of the prosecution, but not the facts of the case. It is to obtain a decision to be used in other cases; to have a decision in advance, and one which, in our opinion, this court would not sustain when the history of the transaction is before it. As illustrative of this statement we attach hereto and make a part hereof, the copy of an indictment charging a felony. There are three of these cases and none of them have been tried."

This motion was argued on November 16 and upon the day following was denied, except as to the question of the dismissal of the appeal, which was reserved for decision upon the final hearing of the appeal; it being stated in the order that the reasons therefor would be set forth in the final opinion upon the whole case.

At the final hearing on November 19 the motion to dismiss was earnestly pressed upon the following grounds:

1. Because in this case the action of the district court is not subject to review by appeal.

2. Because the decision of the lower court should be sustained on principle.

Counsel for appellee, relying upon *People* v. *More,* 71 Cal., 546, insist that the order made and excepted to rests upon section 451 of the Code of Criminal Procedure, which provides, that—

"The court may, either of its own motion or upon the application of the prosecuting attorney and in furtherance of justice, order an action on an information to be dismissed. The reasons of the dismissal must be set forth in an order entered upon the minutes."

Sections 145, 146 and 348 read in part as follows:

"Section 145.—An information charging a felony, not subscribed and sworn to by the prosecuting officer, must be set aside by the court, upon the defendant's motion, made at the time he is arraigned.

"Section 146.—If the motion to set aside the information is not made, the defendant is precluded from afterwards taking the objections mentioned in the preceding section.

"Section 348.—An appeal may be taken by The People:

"1. From an order setting aside the information;

"2. From a judgment for the defendant on a demurrer to the information;"

     ❊          ❊          ❊          ❊          ❊          ❊          ❊

Distinguishing between sections 145 and 451, it is urged that the setting aside of an information relates only to matters of form and irregularity and does not go to the substance of the information; that such a ruling is merely an order and not a judgment; that the filing of a new information may be directed, and that the order is no bar to a future prosecution; while on the other hand the judgment appealed from herein entirely disposes of the case as well as of the information; that it is an order dismissing the case and is final in its pro-

visions and character; that the law gives the court power to dismiss an action; that the court acting under that authority did dismiss, and that the law gives no appeal.

In support of the second ground, it is argued in substance that the decision was rendered in the exercise of the lawful discretion of the court; that the facts to which the court applied the law are not here; that appellant attacks the decision of the lower court in a case not here without presenting the facts upon which the court acted, but only the information.

In *People* v. *More, supra,* decided in January, 1887, the California court, discussing an order made under the power granted in section 1385 of the California code, corrresponding to our section 451, said:

"The respondent moves to dismiss the appeal, upon the ground that the order is one from which no statutory right of appeal is given to the people. It is certainly not one of the enumerated cases in which a right of appeal is given by section 1238 of the code, and there is no other statutory provision giving such right.

"It is contended, however, by appellant, that as the constitution gives this court appellate jurisdiction of questions of law arising 'in all criminal cases prosecuted, by indictment or information, in a court of record,' therefore there is jurisdiction here, although no statutory machinery for the appeal has been provided, as held in *People* v. *Jordan,* 65 Cal., 644. But the order in question is, in its nature and character, one from which the people cannot appeal. The power under which the order was made is substantially the same as that held by the Attorney General in England, and by the prosecuting officer in many of the American states, to enter a *nolle prosequi.* The court, for the purposes of the order of dismissal, takes charge of the prosecution, and acts for the people. It holds the power to dismiss, as the Attorney General in England holds the power to enter a *nolle prosequi,* by virtue of the office and the law; and it is exercised upon official responsibility. The court having acted for The People, and under express power granted by them to so act in their criminal prosecutions, there is no appeal on their part for such action. Of course, if a defendant should appeal from such an order, as he well might if it were made after the impaneling of a jury, a different case would be presented. (*Commonwealth* v. *Tuck,* 20 Pick., 365.)"

We have set forth at somewhat unusual length the facts as they appear from the record, together with appellee's theory of the case, for the reason that a clear, full statement of both seems the strongest refutation of the very plausible argument by which the various propositions submitted by appellee are sought to be sustained. Were the premises upon which the whole of this reasoning is based well grounded in fact, the matter would be by no means free from difficulty. But the record, reasonably construed, we think, does not show this, but rather the contrary.

It is true, as shown by exhibits attached to appellee's motion as part thereof, that the four original informations in the misdemeanor cases were couched in substantially the same terms, differing only as to the dates of commission of the alleged criminal acts, but we cannot agree, and we think a careful comparison will show that it is not necessarily true, that the amended information herein is exactly "the same thing stated in more words." The original information charges the drawing of a certain quantity of alcohol from a distillery without payment of the revenue tax thereon. The amended information charges that defendant defrauded The People of Porto Rico of the internal revenue tax upon a certain quantity of alcohol through failure to pay the same within the time prescribed by law and in the manner prescribed by Treasury regulations attached to the information as part thereof, and sets forth in detail the acts, means and method by which such fraud is alleged to have been perpetrated. It may be, and apparently is true, that the amended information merely states more clearly, accurately and specifically the precise offense intended to be charged in the original information, and it is possible that the latter might have been sufficient to sustain a conviction for the crime charged in the former; but there is somewhat more than a distinction without a difference between the two. It is quite evident that the amended information was most carefully drawn in the light of the court's opinion in the case already

tried and of the authorities in point, and with the rules by which it would necessarily stand or fall upon the final test of judicial scrutiny as to its sufficiency clearly in mind.

It may be, also, that the court was quite right in ordering the acquittal of defendant after hearing the evidence in the case first called for trial; that the testimony to be offered under the new information will be substantially the same that was introduced upon the former trial, and that the court, after hearing the evidence herein, may find the same, or other equally good reasons, for dismissing the prosecution of this case and discharging the defendant. These are matters with which, at present, we have nothing whatever to do.

There is not a scintilla of evidence in the record to indicate that counsel for appellant ever admitted, or were ever asked to admit, or that any stipulation was ever filed, or testimony offered to show, or that anyone concerned ever suggested in the court below that the evidence in this case would be a mere repetition of that adduced on the previous trial. Certainly, under such circumstances the court could not assume this to be true, and a most diligent search of the record fails to reveal that it did so assume. The reason given by the court for adopting its opinion in the previous case as showing the grounds for the order appealed from herein is that "the facts underlying the ruling in that case are identical with the facts stated in the present information, with exception of the dates upon which it is alleged the acts were committed."

As a general rule courts do not of their own motion take judicial notice of their records in another and different case, even though the cases are connected, although the contrary course may, perhaps, be sometimes justified to a certain extent by the peculiar circumstances of the particular case, or by reasons of convenience where controversy is unlikely. 16 Cyc., 918; IV Wigmore, section 2579. The provisions of our own Law of Evidence seem to be in full harmony with this

principle and the questions arising herein strikingly illustrate the wisdom and propriety of the general rule.

Whatever room there may be for difference of opinion as to what is the proper practice in this regard, the question now before us is not whether the court below erred in ordering the acquittal of defendant in another case, a case not now pending in this court the appeal having been dismissed, nor whether the trial judge was right or wrong in his conclusion that the facts proven in a previous case were identical with the facts alleged in the instant information, but, rather, whether or not the court *a quo* erred in holding as it did, simply and squarely, that the facts stated in the amended information herein do not constitute a crime. If the trial judge was correct in his conclusion as to identity of facts, then the amended information contains those facts and needs no supplementary statement. If mistaken, then it is difficult to perceive what bearing facts proven in another case and not stated in the amended information, or at variance with those stated therein, could have upon the question at issue herein, unless upon the theory that this court should affirm the order appealed from, not upon the facts appearing upon the face of the information in this case, but upon facts proven in a case tried and disposed of before such information was filed. This, it is fair to state, is the case viewed in its present aspect. Had the appeal in the other case not been dismissed the facts as testified to below might and no doubt would have been most material to a proper understanding and review of the action of the trial court in that case. But while the proposed consolidation, had it been consummated, might have saved time and labor in the presentation and disposition of the two appeals, it could not in any event have properly influenced the decision in this case and could only have served to cloud and confuse the real issue herein.

Coming now to the question of what the court actually did, or intended to do, and the legal effect of such action, we may say at the outset that we do not deem it necessary to de-

cide, and we do not decide, whether or not the More case is good law today, either in California or Porto Rico; whether or not the California courts would feel. themselves bound thereby under the numerous amendments since made in the California Code, or whether, even in such event, it would control under our own statute as it stands today. These questions we will determine when they arise in a case that has been dismissed, clearly and squarely, under section 451 of the code

What the District Court of Mayagüez held was that the facts stated in the information do not constitute an offense against the laws of Porto Rico. What the court did upon the face of the order was to set aside the information. That is the language of the order itself and of the entry in the minutes, as to the literal meaning of which there is not a shadow of doubt if we eliminate the last seven words.

Appellee's whole theory of the case hangs upon these seven words construed in connection with the opinion in the previous case, the latter being interpreted in turn in the light of the facts proven in that case and the conclusion reached by this circuitous route being that the order herein was a dismissal of the action based upon the evidence adduced in another case, — equivalent to the order of acquittal after hearing testimony in such previous case and within the doctrine of the More case as to legal effect.

The extremely loose phraseology of this final clause, in striking contrast with the clean-cut, emphatic distinction drawn by the language immediately preceding, between the holding of the court and its order, would indicate an afterthought or *dictum* that might very properly be treated as mere surplusage.

If the court intended a dismissal of the action "in furtherance of justice" under section 451, it would seem natural and logical that it should have used the language of that section rather than the words employed by the code in speaking of the setting aside of informations. And it is a curious cir-

cumstance, if counsel understood the order then as they now construe it, that they did not notice the glaring inconsistency between the final clause of the order, as interpreted by them, and the essential dispositive portion thereof and, observing this, did not move an amendment or some further order so as finally to determine this very doubtful and, to the defendant, vitally important question.

Aside from any question as to the inherent power of a trial court to set aside an information that states no crime, and as to whether or not the grounds specified by statute are exclusive (*United States* v. *Wilson,* 44 Fed., 751; *United States* v. *Kuhl,* 85 Fed., 624; *State* v. *Brecht,* 42 N. W., 602; *People* v. *Phifer,* 112 N. Y. Sup., 285; *People* v. *Brickner,* 15 N. Y. Sup., 528; *People* v. *Glenn,* 66 N. E. 112; and *People* v. *Sexton,* 80 N. E., 396), and aside from the proposition that it is immaterial whether the court acts of its own motion or upon motion of the defendant, we do not understand that the order must necessarily be held to be either an order of dismissal, as claimed by appellee, or an order setting aside the information, as insisted upon by appellant.

Under section 153 of the code, a defendant may demur to the information when it appears upon the face thereof either:

    \*        \*        \*        \*        \*        \*        \*

"3. That the facts stated do not constitute a public offense;" (or)

"4. That it contains any matter, which if true, would constitute a legal justification or excuse of the offense charged or other legal bar to the prosecution."

Sections 156 to 159, quite similar in substance to the provisions in regard to dismissal of the action, go even further in some respects than the latter in the matter of finality, as, for instance, upon the question of a bar to another prosecution for the same offense. Yet, as we have seen, the law expressly provides for an appeal by The People "from a

judgment for the defendant on a demurrer to the information.''

Now, giving the order a liberal construction as a final judgment in favor of the defendant, in so far as the trial court can make it final, when based upon the grounds stated therein, we see no reason why the ruling should not be treated as ''a judgment for the defendant on a demurrer to the information,'' — a demurrer interposed by the court, of its own motion, on behalf of the defendant under subdivision 3 or subdivision 4 of section 153. From the grounds stated in the order itself the matter would seem to be covered by subdivision 3, although it would have been more consistent perhaps with the opinion of the court filed as showing further reasons for its ruling if the latter had by its terms been made to rest, in part at least if not entirely, upon the grounds specified in subdivision 4. We find a precedent by analogy for this view of the matter in at least one case quite recently decided by the Supreme Court of Colorado — *People* v. *Zobel* (decided in March, 1913), 130 Pac., 836. The statement of facts and first two paragraphs of the opinion are as follows:

''August Zobel was charged with larceny of ores, and judgment was rendered dismissing the prosecution, and The People bring error. Reversed and remanded.

''The district attorney of the fifth judicial district filed an information against the defendant in error, charging him with the larceny of ores. Two others were also charged with the larceny of these ores, whether in the same or other informations is not altogether clear; but that is not material. Subsequently, in the same district court in which these criminal proceedings were instituted, and before the same presiding judge, a civil action against these parties for the recovery of the value of the ore so charged to be stolen was tried, and a judgment rendered against them. Thereafter the criminal proceedings against defendants other than Zobel were dismissed by the district attorney upon their promises to give evidence against Zobel. Later the district attorney made a motion to fix a time for the trial of Zobel, when the presiding judge said to the district attorney that he had already heard the evidence in the civil action, and therefrom it ap-

peared that the defendants against whom the charge had been dismissed were the principals in the crime and Zobel only an accessory, and, as the principals had been discharged by the district attorney, Zobel, as accessory, could not thereafter be tried. The judge thereupon, over the objection and against the protest of the district attorney, and notwithstanding the latter's statement that he had other evidence of Zobel's guilt than that produced at the trial of the civil action, dismissed the criminal charge against Zobel, discharged him, and released his bondsmen. To review this action, the district attorney has brought the case to this court for review on error, under and by virtue of the provisions of section 1997, R. S. 1908, which so far as material to any question involved, is as follows: *   *   * 'Writs of error shall lie on behalf of the State or The People to review decisions of the trial court in any criminal case upon questions of law arising upon the trial, motions to quash, demurrers, pleas in bar, pleas in abatement, motions in arrest of judgment, or where a statute is declared unconstitutional: *   *   * *Provided*, That nothing in this act shall be construed so as to place a defendant in jeopardy a second time for the same offense.'

"On behalf of The People the district attorney contends that the dismissal of the action and the discharge of the defendant were erroneous, because that step could not be taken without his consent and over his objection; while on the part of the defendant the contention is that the question presented does not come within the purview of the section of the statute above quoted, for the reason that the dismissal was not ordered upon 'questions of law arising upon the trial.'

*          *          *          *          *          *          *

"Gabbert, J. (after stating the facts as above).

"1. It is well settled in this State, and generally in this country, that a writ of error in a criminal case will not lie at the instance of the State, unless clearly authorized by statute (*People* v. *Raymond,* 18 Colo., 242; 32 Pac., 429; 19 L. R. A., 649; *United States* v. *Sanges,* 144 U. S., 310; 12 Sup. Ct., 609; 36 L. Ed., 445); and the first question we shall determine is whether or not the section of the statute above quoted covers the case made by the facts.

"2. It appears from the record that the dismissal of the cause was based upon facts knowledge of which the judge obtained outside of the record in this case, which were that because the proceedings against the other defendants charged with the larceny of the ores had been dismissed, and it appeared to the court from the facts established at the trial of the civil action that they were the principals

and the defendant only an accessory, that the latter could not be tried after the discharge of his principals. In legal effect, therefore, the action of the court was based upon a plea in bar, which of its own motion it orally interposed. Such being the case, it is not necessary to define the meaning of the phrase 'questions of law arising at the trial,' for the reason that a decision of the court was made on a plea in bar, and that is one which the statute specifically authorizes to be reviewed in a proceeding like the present one.''

The assignment of errors herein specifies that the district court erred:

1. In holding that the facts stated in the amended information do not constitute a public crime;

2. In setting aside the information.

After submission of various propositions under this assignment the real question at issue is fairly stated by the Attorney General in the opening sentence of his written argument and is followed forthwith by a clear and concise outline of the specific contentions of appellant under the general issue, thus completing the introductory paragraph of such written argument as follows:

''This case raises the general question of the consent or acquiescence on the part of a government agent as a defense to a criminal prosecution. The apellant, The People of Porto Rico, contends:

''1. That the information states facts constituting a criminal violation by defendant of the internal revenue laws, by failing to pay taxes on certain alcoholic spirits produced by him.

''2. That the defendant is individually responsible for his deliberate fraud, that guilt is personal and unaffected by the criminality or responsibility of the acts of others.

''3. That defendant is not excused because solicited or induced by another, assuming that he was so instigated.

''4. That the acts of the agent Vázquez did not amount to a solicitation or instigation to the crime previously planned by defendant.

''5. That those acts are justified by a sound public policy.

''6. That the crime charged is against the public; hence no one member of the public, government agent or not, has power by consent, to make the crime not a crime.

"7. That these are fundamental principles of the criminal law and are overwhelmingly supported by the authorities."

A determination of the questions raised under subdivisions 3 and 5 is not necessary to the decision of the main issue herein. The information on its face, from beginning to end, clearly, distinctly and consistently negatives, contradicts and denies the theory that the revenue agent, Vázquez, tempted, encouraged, solicited, urged, induced, or instigated the defendant in any manner, shape, or form, to the commission of any criminal act; and there being no suggestion of any effort or attempt on the part of such agent to lure, decoy, or entrap an honest, law-abiding citizen into the commission of crime — no "trap," in the sense that the same is discouraged and condemned by the courts being shown — it follows that there is as yet, so far as we are advised by the record in this case, no need to justify any act of Vázquez upon the grounds of public policy. Anything we might say upon either of these two points would be pure *dictum,* and we therefore abstain from any expression of opinion in this regard.

The position of appellant upon all of the other propositions enumerated in the paragraph just quoted is amply sustained by the cases cited and ably argued in the brief submitted by the Attorney General. We need not cite these numerous authorities. Most of them, together with one or two interesting additional cases, will be found in a note to *Kemp* v. *United States,* 51 L. R. A. (new series), 825, and previous notes therein cited and supplemented.

We have the utmost confidence in the ability of the district judge to apply the law, as announced by these decisions and by such others as may be submitted to him, to the facts as they may be developed on the trial. We do not share the apprehension of counsel for defendant that the court below might be misled by possible *obiter dicta* occurring in any opinion, however extended, upon the facts stated in the information, which are the only facts involved thus far in this

case. In view, however, of the full discussion of incidental questions made necessary by the seriousness and plausibility with which such questions have been presented to our consideration, — counsel for defendant having frankly conceded in the oral argument that the information, if isolated and considered alone, does charge a crime and is substantially free from objection, having declined to discuss this phase of the matter, either orally or in writing, and having addressed themselves solely and exclusively to the preliminary matters hereinabove set forth — and more to avoid extending this opinion beyond reasonable limits than to obviate the rather remote possibility of improperly influencing, or as counsel insist, of "dominating" the decision of cases yet to be tried, we are content to close without discussion or analysis of the cases referred to as applied to the facts stated in the information in this case.

Section 3 of the Excise Tax Law of March 9, 1905 (Laws of 1905, page 165), as amended by Act No. 55 of March 9, 1911, page 170, and Act No. 112 of March 13, 1913, page 160, provides:

"Section 3.—That there shall be levied, collected and paid:
"(1) On all distilled spirits produced in Porto Rico * * * a tax of fifty cents on each liter or fraction thereof * * *.
*      *      *      *      *      *      *
"(12) Every person who fails to pay the taxes herein in this section prescribed, and at the time hereinafter prescribed, except as otherwise provided in this act, shall be guilty of a misdemeanor, and for the first offense shall be punished * * *."

The time referred to as "hereinafter prescribed" is fixed by section 6 of the Excise Tax Law, as amended by Act No. 55 of March 9, 1911, *supra,* as follows:

"The tax shall attach to alcoholic spirits as soon as separated, either in the pure or impure condition, by distillation or other process of evaporation; but payment thereof shall be made before such spirits are removed from the factory, except as otherwise provided in this

act, and in such manner as the Treasurer of Porto Rico may by regulations prescribe.''

Sections 21, 22 and 23 of the Treasury Regulations, attached to the information as part thereof, read as follows:

''Section 21—The tax on distilled spirits shall be paid by means of the purchase and affixing of the corresponding internal revenue stamps to invoices. The stamps and invoice books shall be secured on a proper request to the collector of internal revenue of the district where the distillery is located.

''Section 22.—When a distiller may desire to draw out distilled spirits for consumption, he should provide himself beforehand with a sufficient quantity of internal-revenue stamps and receptacles for receiving the quantity of alcohol which he desires to draw out. He shall then fill out the invoice, showing the quantity of spirits which he desires to draw out, the grade of the same, and the date of the withdrawal. The stub of the said invoice shall also be filled out, and both shall be signed by the distiller. The internal revenue agent of the district, or the special agent in charge of the distillery, shall check the invoice and stub and after verifying the complete payment of the tax, the cancellation of the stamps, and the correctness of the invoice and stub, he shall approve the same by signing them, proceeding then to the delivery of the distilled spirits.

''Section 23.—The internal-revenue stamps attached in payment of the tax on alcohol, shall be cancelled by the distiller. It shall be the duty of every distiller to provide himself with a stamp for cancelling, which on being applied to the internal-revenue stamps, shall leave clearly impressed the name of the distiller, the location of the distillery, and the date of the cancellation of the stamps. After cancelling in due form the stamps attached to the invoice for distilled spirits, the distiller shall separate said invoice from the stub, and on separating it, shall do it in such manner that one-half of each stamp, with the complete number of its series, remains attached to the invoice, and the other half to the stub. The aforesaid invoices shall be sent by the distiller to the Treasurer of Porto Rico the same day in which the invoice is made, and the dispatch of alcohol is effected.''

Reasonably and fairly construed in the light of the statute and regulations quoted, the amended information herein clearly states facts sufficient to constitute a crime and con-

tains no matter which, if true, would excuse or justify the charge or raise any legal bar to the prosecution.

Therefore, whatever may have been the intention of the court below in the ruling excepted to by appellant — whether, as stated therein, to set aside the information because the facts alleged do not constitute an offense, or to render judgment for the defendant upon a demurrer interposed in legal effect by the court of its own motion, either for the same reasons so stated or because the information contained "matter which, if true, would constitute a legal justification or excuse of the offense charged, or other legal bar to the prosecution,"—the motion to dismiss the appeal must be denied, the order appealed from reversed, and the case remanded for further proceedings not inconsistent herewith.

> *Decision reversed, motion for dismissal of appeal denied and case remanded to the lower court for further action in accordance with this opinion.*

Chief Justice Hernández and Justices Wolf, del Toro, and Aldrey concurred.