EL PUEBLO, DEMANDANTE Y APELANTE, *v.* FAJARDO, ACUSADO
Y APELADO.

APELACIÓN procedente de la Corte de Distrito de Mayagüez
en causa por infracción de las leyes de rentas internas.

MOCIÓN del apelado para acumular dos apelaciones, desesti-
mar dichas apelaciones y otros extremos.

No. 732.—Resuelto en diciembre 4, 1914.

ACUMULACIÓN DE APELACIONES CRIMINALES—DESISTIMIENTO ANTERIOR POR EL
APELANTE DE UNA DE LAS APELACIONES.—Una apelación pendiente nó puede
ser acumulada a otra desistida por el apelante, cuando el apelado en ambas
que pide tal acumulación no ha hecho gestión alguna para restablecer la apa-
lación desistida.

INFRACCIÓN DE LA LEY DE RENTAS INTERNAS—EXTRACCIÓN ILEGAL DE ALCOHOL
DE UNA DESTILERÍA—DEFRAUDACIÓN DEL IMPORTE DE LOS DERECHOS DE REN-
TAS INTERNAS—ACUSACIÓN ENMENDADA.—Cuando tratándose de una supuesta
infracción de la ley de rentas internas en la acusación original se especifica
el hecho de haberse extraído cierta cantidad de alcohol de una destilería sin
pagar el impuesto de rentas internas y en la acusación enmendada se alega
que el acusado defraudó al Pueblo de Puerto Rico del importe de los dere-
chos de rentas internas sobre cierta cantidad de alcohol, dejando de pagar
dichos derechos en el momento marcado por la ley y en la forma prevista
por los reglamentos promulgados por el Tesorero de Puerto Rico, expresán-
dose además en detalles los actos, medios y forma en que dicho fraude fué
cometido, aunque en la segunda acusación sólo se determine de un modo más
claro y preciso el mismo delito que se imputó en la acusación original y aun-
que ésta sea tal vez suficiente para sostener una declaración de culpabilidad
por el delito imputado en la acusación enmendada, no es necesariamente cierto
el que tal acusación enmendada sea ''la misma cosa expresada con más pala-
bras.''

CONOCIMIENTO JUDICIAL—EXPEDIENTE DE OTRO CASO RELACIONADO CON EL CASO DE AUTOS.—Por regla general las cortes no toman conocimiento judicial por iniciativa propia del récord de otro caso distinto, aun cuando éste esté relacionado con el caso de autos.

ID.—DESESTIMACIÓN DE UNA ACUSACIÓN—REFERENCIA A LOS HECHOS PROBADOS EN OTRA CAUSA PARA DESESTIMAR DE OFICIO UNA ACUSACIÓN PARECIDA.— No existiendo en los autos del presente caso la más ligera indicación de admisión, estipulación o prueba alguna tendente a sugerir a la corte inferior que la prueba en este caso sería una simple repetición de la presentada en otro caso anterior, dicha corte no puede suponer que esto fuera así, ni se puede presumir que la corte así lo hiciera, sobre todo cuando al expresar los motivos que tuvo para utilizar la opinión emitida en el caso anterior como fundamento de la orden dictada en el presente caso, manifestó ''que los hechos que motivaron la citada resolución en aquel caso son idénticos a los hechos que se alegan en el presente caso, a excepción de las fechas en que se alega que los hechos fueron cometidos, puesto que son fechas distintas y en esto se difieren.''

DESESTIMACIÓN DE ACUSACIÓN—SOBRESEIMIENTO DE LA ACCIÓN—INTERPRETACIÓN DE LA RESOLUCIÓN APELADA.—La parte dispositiva de la resolución apelada dictada de acuerdo con una opinión emitida en otro caso anterior, la cual se hizo parte de tal resolución atendiendo a la supuesta identidad de los hechos alegados en la acusación enmendada con los hechos probados en el caso anterior, dice: ''que los hechos que se aducen en la acusación no constituyen delito contra las leyes de Puerto Rico y, por tanto, ordena que se debe desestimar, como desestima, la citada acusación, la que debe ser archivada y sobreseída''; *se resolvió* que según se desprende de la faz de dicha resolución lo que la corte declaró fué que los hechos alegados en la acusación enmendada no constituyen delito contra las leyes de Puerto Rico y que lo que hizo la corte fué desestimar dicha acusación enmendada y que interpretando liberalmente la resolución apelada equivale a una sentencia a favor del acusado en virtud de una excepción perentoria interpuesta por la corte por su propia iniciativa, sin que en manera alguna pueda ser interpretada dicha resolución como un sobreseimiento de la causa en pro de la justicia, de acuerdo con el artículo 451 del Código de Enjuiciamiento Civil.

INFRACCIÓN DE LA LEY DE RENTAS INTERNAS—HECHOS CONSTITUTIVOS DE DELITO PÚBLICO—CONSENTIMIENTO O AQUIESCENCIA DE PARTE DE UN AGENTE DEL GOBIERNO COMO DEFENSA.—Examinada la acusación enmendada *se resolvió* que los hechos alegados constituyen un delito público y que la misma no contiene materia alguna que de ser cierta constituyera una justificación o excusa legal del delito imputado o excepción legal que excluya la acción.

DESESTIMACIÓN DE APELACIÓN—SENTENCIA A FAVOR DEL ACUSADO EN VIRTUD DE EXCEPCIÓN PERENTORIA—APELACIÓN POR EL PUEBLO.—Examinada la resolución apelada y atendidas las circunstancias del caso *se resolvió* que dicha resolución, ya se considere como una providencia desestimando la acusación por no constituir delito los hechos alegados o como una sentencia a favor del acusado en virtud de excepción perentoria interpuesta en su efecto legal por la corte sentenciadora a iniciativa propia, es apelable, de acuerdo con la sección 348 del Código de Enjuiciamiento Criminal, y habiendo cometido error la corte inferior al dictarla debe ser revocada.

Los hechos están expresados en la opinión.

Abogados del Pueblo: *Sres. Wolcott H. Pitkin, Jr., Attorney General, Salvador Mestre, Fiscal, y Robert Szold, oficial jurídico.*

Abogados del acusado: *Sres. Willis Sweet y Benjamín J. Horton.*

EL JUEZ ASOCIADO SR. HUTCHISON, emitió la opinión del tribunal.

El día 11 de agosto de 1914, fué presentada una acusación en la Corte de Distrito de Mayagüez en la que se imputaba al apelado el delito de infracción a las Leyes de Rentas Internas, cometido como sigue:

"Que en o por el día 18 de febrero de 1914 el dicho Mateo Fajardo Cardona, ilegal y maliciosamente extrajo y permitió extraer cierta cantidad de alcohol, de su destilería, situada cerca de la villa de Hormigueros, y dentro del territorio de la Corte de Distrito del Distrito Judicial de Mayagüez, P. R., sin pagar sobre dicho alcohol el impuesto de Rentas Internas previsto por la ley."

Con permiso del tribunal y previa moción presentada y discutida al efecto, quedó enmendada dicha acusación alegándose en la misma los hechos constitutivos del delito en la forma siguiente:

"Que en el día 18 de febrero de 1914, el citado Mateo Fajardo Cardona, como dueño de la destilería llamada Eureka, situada en la jurisdicción de Hormigueros dentro del territorio de la Corte de Distrito del Distrito Judicial de Mayagüez, Puerto Rico, habiendo destilado gran cantidad de espíritus alcohólicos en su citada destilería, de una manera ilegal y maliciosa, defraudó a El Pueblo de Puerto Rico, del importe de los derechos de rentas internas sobre (500) quinientos litros más o menos de alcohol, dejando de pagar el impuesto exigido por la ley sobre dichos espíritus alcohólicos, en el tiempo prescrito por la ley y en la forma prescrita por los reglamentos promulgados por el Tesorero de Puerto Rico en 1°. de julio de 1911, copia de los cuales se adjuntan y se hacen parte de esta acusación; que dicha cantidad de espíritus alcohólicos fué allí y entonces extraída por Félix Vázquez por orden y con la dirección y

obedeciendo a insistencias del predicho Mateo Fajardo Cardona, quien allí y entonces, ilegalmente dejó de pagar el impuesto de rentas internas que debió pagar antes de remover de su factoría la dicha cantidad de espíritus alcohólicos, dejando de comprar, fijar y cancelar a la correspondiente factura los sellos de rentas internas, correspondientes, de acuerdo con lo prescrito en los ya mencionados reglamentos de Tesorería, antes de extraer de su citada destilería la dicha cantidad de alcohol, no habiendo sido exento dicho alcohol por el Tesorero de Puerto Rico del pago del impuesto debido de acuerdo con lo previsto en la ley; y que con anterioridad al citado día 18 de febrero, y en ese día y en la fecha, tiempo y lugar expresado, el citado Félix Vázquez, actuaba en su carácter de agente de rentas internas debidamente nombrado y siguiendo instrucciones de sus superiores para investigar innumerables fraudes que se habían y se estaban cometiendo en contra de la Ley de Rentas Internas; y que, con anterioridad a febrero 18 de 1914, el citado acusado Mateo Fajardo Cardona insistió y solicitó de Félix Vázquez, para que éste le permitiera extraer alcohol de su destilería sin pagar el impuesto exigido por la ley, y el citado Félix Vázquez fingió estar conforme con la petición y proposición del acusado y actuó en el tiempo y lugar arriba expresado con el propósito de obtener prueba con el fin de perseguir criminalmente al acusado por la violación de la ley que el acusado se había propuesto y quería infringir y que infringió, como, como se ha expresado en esta acusación.''

Subsiguientemente se presentó una moción en la que se solicitaba la eliminación de ciertos párrafos de la acusación enmendada y luego la corte sin resolver las cuestiones así planteadas, y por iniciativa propia, pasó a decidir sobre la acusación enmendada.

El siguiente asiento aparece de las minutas del día 2 de octubre:

''La corte en este día 2 de octubre de 1914, por los fundamentos que se expresan en la resolución escrita agregada al récord, declara que los hechos que se aducen en la acusación enmendada, no constituyen delito en contra de las leyes de Puerto Rico, y por tanto ordena que se debe desestimar como desestima la citada acusación, la que debe ser archivada y sobreseída.''

La orden que en efecto fué suscrita por el juez de distrito es como sigue:

"La corte, hoy día 2 de octubre de 1914, después de examinar la
moción de eliminación presentada por la representación del acusado
Mateo Fajardo, en la que se solicita la eliminación de ciertas alega-
ciones que aparecen en la acusación enmendada presentada ·por El
Pueblo de Puerto Rico y la que fué admitida por esta corte, considera
que es innecesario el que se discuta la citada moción de eliminación
por la razón de que después de un cuidadoso estudio de la acusación
enmendada la corte entiende que los hechos contenidos en la misma
no constituyen un delito público de acuerdo con la opinión dictada
por este tribunal el día 26 de septiembre de 1914, en el caso No. 2815,
de El Pueblo de Puerto Rico, contra Mateo Fajardo Cardona, por
infracción a la ley de Rentas Internas, opinión que se hace parte de
esta resolución, atendiendo a que los hechos que motivaron la citada
resolución en aquel caso son idénticos a los hechos que se alegan en ·
la presente acusación, a excepción ·de las fechas en que se alega que
los hechos fueron cometidos, puesto que son fechas distintas y en
esto se difieren.

"Por las razones expuestas esta corte declara que los hechos que se
aducen en la acusación no constituyen delito contra las leyes de Puerto
Rico, y por tanto ordena que se debe desestimar como desestima, la
citada acusación, la que debe ser archivada y sobreseída.''

La opinión de fecha septiembre·26 a que se ha hecho refe-
rencia y que se hizo formar parte de la mencionada orden,
es en parte como sigue:

"La corte dicta resolución en las dos mociones de *merger* y de
*non suit* presentadas por el acusado en el día de ayer.

"La corte ha examinado con toda atención los numerosos casos cita-
dos por ambas partes durante la discusión de estas dos mociones y
además ha consultado toda la jurisprudencia pertinente a las cuestiones
suscitadas que se encuentra en la biblioteca de esta corte y que ha
tenido el juez el tiempo de encontrar.

"La corte encuentra que distinguiendo los casos uno a otro, que la
jurisprudencia no está contradictoria respecto a la principal cuestión
que fué presentada y discutida por el Juez Sweet. Los tribunales
están acordes respecto al principio en derecho criminal que medios
empleados en la averiguación o descubrimiento de un crimen no
constituyen defensa que pueda alegar el acusado, pero cuando se
emplean medios para estimular o solicitar la comisión de un crimen,
esto le releva de toda responsabilidad criminal.

"Los hechos en este caso, como resultan de la declaración del testigo

Vázquez, agente de Rentas Internas, son que vino a Mayagüez poco tiempo antes de ocurrir el hecho, con el fin de investigar varios casos aquí, y además de desempeñar sus deberes de agente de Rentas Internas; que en ocasión el acusado le ofreció una dádiva para permitirle sacar alcohol fraudulentamente del depósito de la destilería. 'Eureka' de su propiedad; que lo ocurrido lo puso en conocimiento de sus superiores y entonces recibió instrucciones para permitir al acusado de cometer violaciones de la ley de Rentas Internas, de recibir dádiva de él y después denunciar los hechos, y que él efectivamente, en un día que se alega en la acusación, permitió sacar del depósito de alcoholes de la destilería del acusado 500 litros de alcohol sin pagar los sellos correspondientes, y que después en el mismo día, recibió del acusado la suma de cien dólares. El testimonio del agente Vázquez, demuestra que él proporcionó la oportunidad al acusado para cometer el delito, que él prestó su ayuda sin la cual el delito nunca podría realizarse, y lo hizo con la intención de cogerlo *infraganti* y denunciarlo a los tribunales. El acto de consentir en abrir el depósito fué un estímulo al acusado para la comisión del fraude. Es verdad que la proposición de cometer el fraude partió del acusado, que Vázquez al principio no instigó a Fajardo a cometer el delito, pero él obraba de acuerdo, con instrucciones de cogerlo en el delito si fuera posible y su acto en dar lugar a extraer el alcohol era lo mismo que si lo hubiera instigado. Para realizar el acto delictivo Vázquez tenía que cometer un acto contra la ley, abriendo la llave del depósito y permitiendo sacar alcohol sin cancelar los sellos de Rentas Internas correspondientes.

"En el caso de *Saunders* v. *People,* 38 Mich., 218, citado en *Connor* v. *People,* reportado en 25 L. R. A., 37 y 348, la convicción por escalamiento en la corte inferior fué revocada. El acusado era abogado y le interesaba obtener posesión de unas fianzas que se encontraban archivadas en una corte y solicitó a un guardia o empleado de la corte llamado Webb, de dejar abierta la puerta de la corte de modo que él pudiera entrar y llevarse dichas fianzas. Webb después de consultar con su jefe superior consintió en lo propuesto y dejó la puerta de la corte abierta, pero preparó todo para coger al escalador, y efectivamente fué sorprendido un tal Moylan en el acto de sacar los documentos. La Corte Suprema de Michigan resolvió que el acusado no podía ser declarado culpable basado en esta evidencia.

"La corte considera el caso citado de gran peso, no sólo por los fundamentos consignados en la opinión, sino también por la alta respetabilidad de los jueces que componían dicha corte, siendo uno de

ellos el Juez Cooley, uno de los jurisconsultos más notables en la historia de la judicatura de los Estados Unidos.

  *   *   *   *   *   *   *

"La misma doctrina se encuentra sentada en los casos de: *Connor* v. *People,* 25 L .R. A., 341; *United States* v. *Adams,* 59 Fed., 674; *State* v. *Dudodusset,* 47 La. Ann., 977, 995, 996, 997.

"Entre los casos citados por el fiscal, hay varios que se refieren a la venta de licores en violación a la ley, la venta de monedas falsas, y el uso del correo para fines ilícitos. Estos son casos en que los medios empleados por los agentes de la autoridad tienen por objeto averiguar las personas que se dedican a negocios ilícitos y de obtener evidencia de delitos que están cometiendo y son sostenidas por los tribunales.

"El fiscal citó también el caso recientemente resuelto por el Tribunal Supremo de Texas, de *Minter* v. *State,* reportado en 159 S. W., 286. Este caso se refiere a la venta de licores prohibida por la ley, y se trata de dos policías que prestaban servicios en un pueblo del Estado de Texas, que fueron sobornados por una persona para permitirles seguir el negocio de la venta de licores en contra de la ley. Pero parece que no había la evidencia suficiente para presentar una acusación y de obtener una convicción por el delito de soborno, y para obtener esa evidencia se preparó una trampa para coger al acusado, que dió el resultado deseado y de este modo se obtuvo la evidencia necesaria, y la corte resolvió que la convicción era legal. El fiscal encuentra este caso parecido al presente, porque en el caso de Texas los policías no solicitaron una dádiva sino que la oferta partió del mismo acusado, lo mismo que en el caso de Fajardo. La corte entiende que los dos casos son muy distintos. En el caso de Texas, la realización del delito de soborno no dependía de la voluntad de los policías, y además el delito de soborno ya se había cometido, la dádiva ya se había ofrecido a los policías, pero en el caso presente no importa la intención que tuviera el acusado, la idea que él hubiese formado, todo se estrellaba contra el recto cumplimiento de su deber por el agente; el acusado ha podido intentar, ha podido pensar y formar sus planes para defraudar al Tesoro de Puerto Rico durante tiempo indefinido, pero sin la más mínima esperanza de realizarlo mientras que el agente cumpliera con su deber y no abriera el depósito. El acusado ha podido tener muchos deseos de sacar alcohol del depósito sin pagar la contribución, pero lo que él deseaba y lo que hubiera tenido la intención de hacer era imposible a menos que Vázquez, el agente se prestara a su ayuda. Cuando el acusado hizo la proposición al agente, de darle dinero para violar la ley, se cometió el delito de soborno, (para los

propósitos de esta moción la corte tiene que darle entero crédito a la declaración del testigo Vázquez), pero él no cometió ningún delito contra la ley de Rentas Internas al ofrecer esa dádiva, y no fué necesario de permitirle sacar alcohol del depósito para obtener evidencia de una violación de dicha ley ya realizada, o que hubiera el temor de que se realizara. Para los efectos de un proceso por el delito de soborno, estaban justificados los medios empleados, en cuyo caso sería de aplicación el caso que cita el fiscal, de *Minter* v. *State,* pero porque eran justificados los medios empleados para obtener evidencia del delito de soborno, no resulta que estén justificados para la persecución de la violación de la ley de rentas internas, objeto de la acusación.

"Antes de terminar, la corte quiere referirse al caso de *Grimm* v. *United States,* 156 U. S., 604; 39 L. ed., 555. En la opinión de este caso se refiere a delitos de hurto del correo, de cartas conteniendo dinero y artículos de valor, que son cometidos generalmente por los mismos empleados del correo. Para descubrir esos delitos y obtener la evidencia, es la práctica de los inspectores de correo de depositar cartas conteniendo billetes de banco marcados en el correo y después ponerse en vigilancia y sorprender a la persona que sustrae dichas cartas de entre la correspondencia. La corte critica tales procedimientos, pero termina sosteniéndolos únicamente por la razón de la necesidad del caso. En el caso presente no hay tal necesidad porque nadie puede sacar alcohol del depósito de una destilería, a menos que esté en confabulación con el agente de Rentas Internas; si la acusación fuera contra algún agente de Rentas Internas y la trampa se hubiera preparado para cogerlo a él, entonces se podría argüir que la corte debía sostener tales medidas por la necesidad del caso.

"La corte afirma que cuando la comisión de un delito por una persona depende en absoluto de un acto de otra persona, quien es un agente de la autoridad, y éste último consiente en su comisión con la intención de denunciar criminalmente a la primera, la ley no permite que el hecho así realizado sea considerado como delito público.

"Los hechos en el presente caso son distintos a los de todos los casos que la corte ha examinado, pero en ninguno existe mayor razón para la aplicación de la regla, y la corte, opinando que el acusado está relevado de responsabilidad criminal bajo la acusación, y considerando la evidencia insuficiente para sostener las alegaciones de la acusación, ordena su absolución."

En 12 de noviembre el apelado formuló una moción ante este tribunal alegando en ella que en 24 de septiembre el

acusado fué juzgado a virtud de una de las cuatro acusacio-
nes, en todas las cuales se imputaba el mismo delito en igual
forma, diferenciándose únicamente en las fechas en que se
alega fueron cometidos los distintos actos delictivos; que
de dichas acusaciones dos habían sido despachadas por la
corte de distrito, habiéndose interpuesto apelación en ambos
casos, uno de los cuales fué sobreseído a virtud de moción
de *non suit* que fué presentada después de introducida la
prueba, siendo éste el caso en el cual se emitió la opinión
de fecha 26, y el otro el que ahora consideramos; que los
motivos en que se fundó el juez de distrito para sobreseer
la segunda acusación, aparecen en el récord de la apelación
actualmente ante la corte, pero que la prueba sobre la cual
se basó la corte no aparece, y por virtud de estos hechos
solicitó de esta corte una orden disponiendo que los letra-
dos del apelante sometieran el récord en la apelación contra
la resolución de la corte en el caso No. 733, la que debería
contener la prueba o una exposición correcta de los hechos
en que se fundó la corte de distrito para desestimar ambas
acusaciones; que las vistas de las dos apelaciones fueran
acumuladas; que se fijara un día para oir las mismas, y se
les permitiera a los letrados del apelado presentar un ale-
gato que comprendiera las cuestiones envueltas en ambas
apelaciones; que ambas apelaciones se desestimaran por no
haber cumplido el apelante con la sección 356 del Código
de Enjuiciamiento Criminal, que requiere que el apelante en
todos los casos criminales someta a esta corte una exposi-
ción del caso; y que la vista del caso No. 732 (o sea el pre-
sente) fijada para el día 19 de noviembre, fuera suspendida
y señalada de nuevo para vista en la apelación acumulada
para la fecha que la corte juzgue oportuna.

Después de presentada esta moción y con anterioridad
a la fecha fijada para su vista, fué desestimada a moción
del Fiscal la apelación en el caso que aquí se trata de acu-
mular.  El abogado del apelado no hizo gestión alguna con
el fin de que el mismo quedara de nuevo en el calendario.

Aparece de modo claro que esta apelación no puede ser acumulada a un caso que no está pendiente ante este tribunal.

Citamos del alegato escrito presentado por el apelado lo suficiente para presentar en términos generales la proposición formulada por el abogado:

"En la presente apelación el Estado puede dirigirse a la corte de distrito con su decisión revocando la causa actualmente pendiente, y decir al juez de distrito: 'nuestra sentencia ha sido revocada y ahora llamamos a vista las dos acusaciones restantes que son idénticas a aquellas que fueron perdidas por el Estado y con los mismos hechos os pedimos una convicción.' Se ve cuán fácil sería hacer uso del poder de la Corte Suprema para influir, o mejor dicho, prevalecer en el fallo de la corte inferior, sin que hayamos traspasado los límites de un caso meramente hipotético, y sin que hayamos tratado en sí el caso resuelto por la corte de distrito.

"Al final de la opinión en el caso celebrado la corte dice: 'Y considerando la prueba insuficiente para sostener las alegaciones de la acusación, la corte decreta la absolución del acusado.'

"¿Qué fundamento tuvo la corte para declarar insuficiente la prueba? ¿El sistema de anzuelo usado en el caso solamente? No lo sabemos. Nosotros sostuvimos en el argumento de la moción que, independiente, de este aspecto del caso, la prueba era insuficiente para sostener un veredicto, y que no era bastante para sostener la acusación. Nosotros somos aún de esa opinión, y creemos que esta hon. corte llegará a esa misma conclusión.

"Si esto fuese así ¿por qué razón hemos de exponer al acusado ál peligro de una revocación sin siquiera una vista de la causa que realmente se halla sometida al juicio de este tribunal?

"Además, y a fin de dar más fuerza a esta observación, examínese el comienzo de la opinión o fallo de la corte de distrito. Obsérvese la línea de preguntas e *issues* que descansa sobre la prueba y procedimientos en el caso que realmente presenta los puntos suscitados en. esta corte.

"Las cuestiones específicas envueltas en esta apelación—la apelación que debe ser vista—no pueden ser determinadas por la corte, en nuestra humilde opinión, sin que ésta tenga ante ella los hechos a los cuales pueda aplicarse la ley.

"No es nuestra intención tratar de establecer en este argumento distinciones entre casos, principios o hechos envueltos. No podríamos hacerlo si quisiéramos; y sin embargo, a la corte se le pide que asuma

una actitud que colocaría a esta corte y a este pueblo en un sentido u otro, del lado de distinciones que han sido ya establecidas por muchos de los tribunales capaces de la Nación, el Tribunal Supremo de los Estados Unidos inclusive.

  *   *   *   *   *   *   *

"Todo, historia, nombre, familia, fortuna, los derechos individuales del hombre, todo, en fin, ha de decidirse por las alegaciones no probadas de un acta de acusación formulada por referencia.

  *   *   *   *   *   *   *

"Al desestimar la corte de distrito la causa actualmente ante este Hon. Tribunal actuó sobre el hecho principal en que se fundan las cuatro acusaciones. Y con completo conocimiento del hecho principal el que ninguna sutileza puede alterar, el hecho sobre el cual la ley debe ser aplicada en todos estos casos, y después de un cuidadoso examen de los casos de 'celada,' según se verá en la opinión, la corte desestimó el otro *misdemeanor,* es decir, el que está pendiente actualmente; contra este sobreseimiento es que se ha apelado ante esta Hon. Corte.

"El aspecto de 'celada' que tiene este caso, el que envuelve la ley y los hechos en la cuestión que se presenta ante este Hon. Tribunal, no hemos de discutir ahora porque los hechos no han sido traídos aquí. Los funcionarios del Gobierno pueden por medio de mañas, inducir al ciudadano a cometer un delito por razones buenas o malas; pero nosotros con el debido respeto, rehusamos ser inducidos a discutir una cuestión que, entre todas las cuestiones, debe versar sobre hechos, cuando estos hechos no están presentes.

"Es muy cierto que la parte contraria dice que los hechos aparecen del acta de acusación. En cuanto a los hechos alegados estamos de acuerdo; pero no así en cuanto a los hechos probados. Y si se alegase que el caso juzgado nada tiene que ver con este caso ¿por qué entonces traer aquí la opinión de la corte en el primer caso?

"Responderemos a la pregunta: Ha sido traída pues porque la opinión en el primer caso es la base del sobreseimiento en el segundo caso; pero los hechos envueltos en el primer caso en los cuales se funda la opinión, no han sido traídos a la corte. Y habremos de agregar que la resolución de la corte obedeció a su propia moción, ya que al juez le constaba, como asimismo a los abogados de ambas partes, que los hechos—los hechos esenciales—son idénticos en todos estos casos de *misdemeanor*

"Después de cuidadosa consideración los abogados del apelado han llegado a la conclusión que ellos no pueden, como acto de justicia

a la corte, a su cliente y a ellos mismos, entrar en una discusión respecto de la conducta del agente de Rentas Internas, y la posición en que fué colocado por·la ley como resultado de sus propios actos. La cuestión en general ha sido extensamente discutida por los tribunales, y si bien se han consignado distintos criterios no obstante, la línea divisoria trazada entre los diferentes casos es bien marcada. Y vuestras Señorías enseguida se apercibirán que cada caso debe ser resuelto sobre los hechos y circunstancias peculiares que lo acompañan. ¿Cómo, pues, habíamos de poder nosotros estudiar este caso y la ley aplicable al mismo y suplicar luego a Vuestras Señorías la aplicación de la ley a los hechos en dicho caso? Podíamos ofrecer a la corte las distinciones establecidas por las diferentes cortes, y el tema podría resultar interesante; pero ¿de qué utilidad podría ser para Vuestras Señorías una discusión así planteada tratándose de una resolución que sin duda habría de colocar a esta Hon. corte en línea con las demás autoridades sobre la misma materia? .

"Se nos presenta aquí una acusación, que también pretende ser— así alegan los de la parte contraria—una exposición de hechos.

"No hay certificación, excepto aquella que dice que la acusación de autos contiene la misma relación de hechos contenida en la acusación bajo la cual el apelado fué juzgado y absuelto. Pero no hay certificación alguna en cuanto a los hechos producidos en el juicio de la causa sobre que la opinión se funda.

"¿Cuál es entonces el propósito de esta apelación? Pues evitar la verdadera *issue,* y obtener una decisión que pueda utilizarse en subvenir a las necesidades del ministerio fiscal, más no a los hechos en el caso. Es para obtener una decisión que pueda servir en otros casos, es decir, una decisión anticipada tal cual en nuestra opinión, esta corte no habría de sostener cuando la historia de lo ocurrido estuviere ante ella. Como un ejemplo de lo que acabamos de decir, acompañamos a este argumento y hacemos parte del mismo, la copia de un acta de acusación en que se acusa de un *felony.* Hay tres de estos casos, y ninguno ha sido juzgado."

Esta moción fué discutida en noviembre 16 y denegada al día siguiente excepto en cuanto a la cuestión relativa a la desestimación de apelación, la cual se reservó la corte para resolverla al decidir en definitiva la apelación, expresando la resolución que las razones que hay para ello se haríar constar en la opinión que se emitiría finalmente en. el caso.

En la vista final que tuvo lugar en noviembre 19, se hizo formal insistencia en la moción para desestimar la apelación por las razones siguientes:

1. Porque la acción adoptada por la corte de distrito en este caso no puede ser revisada mediante apelación.

2. Porque la orden de la corte inferior debe ser declarada con lugar en principio.

El abogado del apelado basándose en el caso de *People* v. *More,* 71 Cal., 546, insiste en que la orden que fué dictada y contra la cual se tomó excepción, se funda en la sección 451 del Código de Enjuiciamiento Criminal que prescribe lo siguiente:

"El tribunal, ya por su propio acuerdo o ya a petición del Fiscal y en pro de la justicia, puede decretar el sobreseimiento de una causa o de una acusación  Las causas del sobreseimiento deben exponerse en el auto que al efecto se dicte, el cual se insertará en el acta del proceso."

Las Secciones 145, 146 y 348, se expresan en parte en los términos siguientes:

"Sección 145.—Una acusación denunciando un delito grave (*felony*) que no viniere firmada y jurada por el Fiscal, será desestimada por el tribunal, a instancia del acusado hecha al formularse la acusación."

"Sección 146.—Si el acusado no pidiere que la acusación sea desestimada, no podrá luego interponer las objeciones mencionadas en el precedente artículo."

"Sección 348.—El ministerio público puede establecer apelación:

"1. De una providencia desestimando la acusación.

"2. De una sentencia a favor del acusado en virtud de excepción perentoria puesta a la acusación";

*    *    *    *    *    *    *

Se alega para establecer la diferencia que existe entre las secciones 145 y 451, que la desestimación de una acusación se refiere solamente a materia de forma e irregularidades, y no afecta al fondo de la acusación, que tal orden es simplemente una orden y no un fallo; que puede ordenarse

la presentación de una nueva acusación, y que la orden no es un obstáculo legal a una nueva acta· de acusación mientras que, por el contrario, el fallo apelado en este caso completamente pone término a la causa, así como a la acusación; que es una orden sobreseyendo la causa y que es final en sus disposiciones y naturaleza; que la ley confiere a la corte facultades para sobreseer una acción; que la corte actuando de conformidad con dicha facultad sobreseyó, y el estatuto no concede apelación.

Se alega en sustancia en apoyo del segundo fundamento, que la decisión fué dada en el ejercicio del poder discrecional legal de la corte; que los hechos a los cuales la corte aplicó la ley, no han sido traídos aquí; que el apelante ataca la decisión de la corte inferior, en un caso que no está pendiente ante este tribunal sin ofrecer los hechos sobre los cuales se basó el tribunal, y sí solamente la acusación.

En el caso de *People* v. *More,* arriba citado, resuelto en enero de 1887, la Corte de California al discutir una orden dictada de acuerdo con la facultad que confiere al tribunal el artículo 1385 del Código de California, equivalente al 451 de nuestro Código, se expresó como sigue:

"El apelado formula una moción para que se desestime la apelación por el fundamento de que la orden es una contra la cual el estatuto no concede derecho de apelación al Pueblo. Ciertamente que no es ella una de las enumeradas en las cuales concede derecho de apelación el artículo 1238 del código, y no existe ningún otro precepto estatutario que confiera tal derecho.

"Se alega sin embargo, por el apelante, que confiriendo la Constitución a esta corte jurisdicción de apelación de cuestiones legales que surjan 'en todas las causas criminales que se sigan mediante denuncia o acusación en una corte de registro,' tiene por tanto este tribunal jurisdicción aún cuando no se haya prescrito ningún mecanismo estatutario para la apelación, según se resolvió en el caso de *People* v. *Jordán,* 65 Cal., 644. Pero la orden en cuestión es por su naturaleza y condición una contra la cual el Pueblo no pueda apelar. La facultad por virtud de la cual se dictó la orden es sustancialmente igual a la que se confiere al Fiscal General en Inglaterra, y al Fiscal en muchos de los Estados americanos, para registrar una

orden de sobreseimiento (*nolle prosequi*). La corte, para los fines
de la orden de sobreseimiento asume el control de la causa y actúa
a nombre del Pueblo. Retiene la facultad para sobreseer como el
Fiscal General en Inglaterra la retiene para registrar una orden de
sobreseimiento (*nolle prosequi*) por virtud de su cargo y por la ley;
y ejercita dicho poder bajo su responsabilidad oficial. Habiendo ac-
tuado la corte a nombre del Pueblo y por virtud de los poderes que
expresamente le han sido conferidos por el mismo para proceder así
en sus causas criminales no puede éste interponer apelación contra
su resolución. Desde luego que si un acusado apelara contra dicha
orden como bien podría hacerlo si se dictara después de constituído
un jurado, el caso sería muy distinto. *Commonwealth* v. *Tuck*, 20
Pick, 365.'' (*People* v. *More*, 71 Cal., 546.)

Hemos expresado con una extensión algo mayor que de
ordinario, los hechos tal como constan de los autos así como
la teoría del caso que sustenta el apelado, pues entendemos
que la exposición clara y completa de ambas cosas consti-
tuye al parecer la más fuerte refutación de la muy plausi-
ble argumentación por virtud de la cual se pretende que
sean sostenidas las diferentes proposiciones que han sido
sometidas por el apelado. Si estuvieran realmente funda-
das las premisas en las cuales todo este razonamiento des-
cansa, sin duda que la cuestión no estaría completamente
libre de dificultad. Pero opinamos que esto no aparece de
una interpretación razonable de los autos, sino más bien
lo contrario.

Es cierto, según los comprobantes que se acompañan a
la moción del apelado y que forman parte de la misma, que
las cuatro acusaciones presentadas originalmente en los casos
de *misdemeanor*, fueron redactadas en sustancia en los mis-
mos términos y sólo se diferenciaban en cuanto a las fechas
de la comisión de los supuestos actos delictivos que en ella
se alegan, pero no podemos estar de acuerdo, y creemos
que de un examen cuidadoso de las mismas se verá que no
es un hecho necesariamente cierto que la acusación enmen-
dada en este caso sea enteramente ''la misma cosa aunque
expresada con más palabras.'' En la acusación original se
imputa el hecho de extraer cierta cantidad de alcohol de

una destilería, sin pagar el impuesto de rentas internas por
el mismo. En la enmendada se alega que el acusado de-
fraudó al Pueblo de Puerto Rico del importe de los dere-
chos de rentas internas sobre cierta cantidad de alcohol, de-
jándose de pagar los mismos en el tiempo prescrito por la
ley, y en la forma prevista por los reglamentos promulgados
por el Tesorero de Puerto Rico que se acompañan a la acu-
sación y se hacen formar parte de la misma, expresándose
además en detalle los actos, medios y forma en que se alega
que dicho fraude fué cometido. Puede ser, y al parecer es
cierto que en la acusación enmendada simplemente se deter-
mine de un modo más claro, determinado y preciso el mismo
delito que se trató de imputar en la acusación original, y
es posible que la segunda hubiera sido suficiente para basar
en ella una sentencia condenatoria por el delito imputado
en la primera, pero hay algo más que una distinción sin que
exista diferencia entre las dos. Es ciertamente claro que la
acusación enmendada fué redactada muy ciudadosamente, to-
mando en consideración la opinión de la corte en el caso
ya fallado y las autoridades que son de aplicación, y de
acuerdo con las reglas según las cuales tendría necesaria-
mente que ser considerada o no como válida, al ser sometida
en definitiva a un detenido estudio legal en cuanto a su sufi-
ciencia.

Puede también que la corte haya procedido correctamente
al ordenar la absolución del acusado después de conocer la
prueba en el caso que fué llamado primeramente a juicio;
que la prueba que había de ofrecerse para sostener la nueva
acusación, hubiera sido sustancialmente idéntica a la pre-
sentada en el juicio anterior, v que la corte después de oir
la prueba que se presentara hubiera podido resolver en igual
sentido, o tener otras razones que fueran asimismo sufi-
cientes para sobreseer esta causa y absolver al acusado.
Estas son cuestiones con las cuales no tenemos ahora abso-
lutamente nada que ver.

No existe la más leve prueba en los autos de donde apa-

rezca que jamás hubiera admitido el abogado del apelante,
o se le haya pedido alguna vez que admitiera, o que se hiciera
alguna estipulación o presentara alguna prueba para demos-
trar, o que alguna persona interesada haya sugerido ante la
corte inferior, que la prueba de este caso no sería sino una
repetición de la presentada ya en el juicio anterior.  Sin
duda que en vista de esta circunstancia la corte no podía
suponer que esto fuera cierto, y no resulta comprobado de
un examen cuidadoso de los autos que así lo hiciera.  La
razón aducida por la corte para adoptar su opinión en el
caso anterior con el fin de expresar los motivos de la orden
apelada en este caso, es la de "que los hechos que motiva-
ron la citada resolución en aquel caso son idénticos a los
hechos que se alegan en la presente acusación a excepción
de las fechas en que se alega que los hechos fueron come-
tidos, puesto que son fechas distintas y en esto se difieren."

Por regla general las cortes no toman conocimiento judi-
cial por iniciativa propia de sus expedientes en otro caso
distinto aún cuando los casos estén relacionados, aunque a
veces el adoptar un criterio contrario está justificado en
cierto modo por las circunstancias especiales del caso en
particular o por razones de conveniencia cuando no existen
probabilidades de que haya controversia, 16 Cyc., 918; IV
Wigmore, pár. 2579.  Los preceptos de nuestra propia Ley
de Evidencia. están en armonía al parecer con este princi-
pio, pudiendo servir de ejemplo notable de la sabiduría y
propiedad de la regla general, las cuestiones que aquí han.
surgido.

Cualquiera que sea el motivo para que exista diferencia
de parecer en cuanto a cuál es la verdadera práctica en rela-
ción con esto, la cuestión que ahora pende ante este tribu-
nal no es la de si la corte de distrito cometió error al orde-
nar la absolución del acusado en otro caso, que no está ahora
sometido a la consideración de la corte por haberse deses-
timado la apelación, ni si la corte inferior procedió errónea
o correctamente al llegar a la conclusión de que los hechos

probados en un caso anterior eran idénticos a los alegados
en la presente acusación, sino más bien si la corte a quo come-
tió o no error al resolver como lo hizo, simple y escueta-
mente, que los hechos expresados en la acusación enmen-
dada en esta causa no son constitutivos de delito alguno.
Si fué correcta la conclusión a que llegó la corte senten-
ciadora respecto a la identidad de los hechos, entonces la
acusación enmendada contiene aquellos hechos y no necesita
ninguna exposición adicional. Si estuvo equivocada, se hace
entonces difícil comprender qué relación podían tener con
las cuestiones que aquí se discuten, los hechos probados en
otro caso y que no han sido alegados en la acusación enmen-
dada o que están en discrepancia con los allí expresados,
a menos que sea por el fundamento de que este tribunal debe
confirmar la orden apelada, no a virtud de los hechos que
aparecen de la faz de la acusación formulada en este caso
sino por los hechos probados en un caso que ya ha sido juz-
gado y resuelto antes de que se hubiera formulado dicha acu-
sación. Justo es expresar que este es el caso según el aspecto
que ahora presenta. Si no se hubiera desestimado la ape-
lación en la otra causa, los hechos declarados ante la corte
inferior, sin duda que hubieran sido completamente necesa-
rios para poder llegar al verdadero conocimiento y consi-
deración de la acción tomada por la corte inferior en el refe-
rido caso. Pero aunque se hubiera llevado a cabo la acumu-
lación que se pretendió y ahorrado tiempo y trabajo en la
presentación y resolución de las dos apelaciones, de ningún
modo hubiera podido influir en la resolución de este caso
y solamente habría servido para ocultar y confundir la ver
dadera cuestión, que aquí se presenta.

Pasando ahora a la cuestión de lo que la corte hizo en
realidad o trató de hacer, así como al efecto legal de dicha
acción, podemos decir al empezar que no creemos necesario
el resolver y no resolvemos si el caso de More es o nó hoy
buena jurisprudencia en California o Puerto Rico; o si las
cortes de California se sentirían o no obligadas por virtud

del mismo, en vista de las numerosas enmiendas que desde entonces se han introducido en el Código de California, o si aún en ese caso sería obligatorio de acuerdo con nuestro estatuto en la forma que ahora rige. Resolveremos estas cuestiones cuando surjan en un caso que haya sido sobreseído de modo claro y terminante de conformidad con el artículo 451 de nuestro código.

Lo que la Corte de Distrito de Mayagüez declaró fué que los hechos que se aducen en la acusación no constituyen delito contra las leyes de Puerto Rico. Lo que hizo la corte, según la faz de la orden, fué desestimar la acusación. Tal es el lenguaje de la propia orden y del asiento que se hizo en las minutas con respecto a cuyo significado literal no hay la más mínima duda si eliminamos las últimas siete palabras.

Toda la teoría del caso sustentada por el apelado estriba en esas siete palabras interpretadas en relación con la opinión emitida en el caso anterior, siendo ésta interpretada a su vez, a la luz de los hechos probados en aquel caso y llegándose a la conclusión por este medio tortuoso, de que la orden dictada en el presente caso constituyó un sobreseimiento de la causa fundada en la prueba aducida en otro caso equivalente a la orden de absolución dictada después de oída la prueba testifical en dicho caso anterior y comprendida en el principio enunciado en el caso de More en lo que respecta al efecto legal.

La completa vaguedad de los términos en que ha sido redactada esta cláusula final, que establece un notable contraste con la bien definida y enfática distinción que se hace en el lenguaje que inmediatamente precede, entre el criterio de la corte y su orden, indicaría una reflexión posterior o *dictum* que bien podría ser considerada como materia superflua.

Si el objeto de la corte fué sobreseer la causa "en pro de la justicia" de acuerdo con el artículo 451, parece lógico y natural que se hubiera expresado en los términos del mismo

más bien que con las palabras que usa el código al tratar de las desestimaciones de acusaciones. ·Y resulta curioso si es que el abogado entonces entendió la orden en el sentido que ahora la interpreta, que no viera la palpable incompatibilidad que existe entre la cláusula final de dicha orden según ha sido interpretada por dichos abogados, y la parte dispositiva esencial de la misma, y que al notar esto no trataran de proponer enmiendas o que se dictara alguna otra orden para dejar resuelta de una vez esta cuestión dudosa y de importancia vital para el acusado.

Dejando a un lado la cuestión relativa a la facultad inherente de una corte sentenciadora para desestimar una acusación en la que no se determina un delito, y la de si los fundamentos que se especifican en el éstatuto son de carácter exclusivo, *United States* v. *Wilson,* 44 Fed., 751; *United States* v. *Kuhl,* 85 Fed., 624; *State* v. *Brecht,* 42 N. W., 602; *People* v. *Phifer,* 112 N. Y. Sup., 285; *People* v. *Brickner,* 15 N. Y. Sup., 528; *People* v. *Glenn,* 66 N. E., 112; y *People* v. *Sexton,* 80 N. E., 396, y haciendo caso omiso de la proposición de que no es esencial el hecho de que la corte actúe por iniciativa propia o a moción del acusado, no vemos que dicha orden tenga que ser considerada necesariamente como una orden de sobreseimiento, como alega el apelado, o una orden desestimando la acusación según sostiene el apelante.

De acuerdo con la sección 153 del código, el acusado podrá poner reparo a la acusación cuando de su contenido resultare:

\* \* \* \* \* \* \*

"3. No constituir delito público los hechos denunciados;" o

"4. Contener cualquiera materia que de ser cierta constituiría una justificación o excusa legal del delito denunciado, o excepción legal que excluya la acción."

Las secciones 156 a la 159, que son muy parecidas en substancia a los preceptos relativos al sobreseimiento de la causa, son aún más amplias en algunos particulares que estos últimos en cuanto a la finalidad, como por ejemplo, en lo

que respecta al obstáculo legal que constituye para otra causa
por el mismo delito.    Sin embargo, según hemos visto la
ley prescribe de modo expreso que El Pueblo puede inter-
poner apelación "de una sentencia a favor del acusado en
virtud de excepción perentoria puesta a la acusación."

Ahora bien, interpretando la orden en un sentido liberal
como sentencia definitiva a favor del acusado hasta donde
alcancen las facultades de la corte sentenciadora para darle
ese carácter cuando la misma se funda en las razones expre-
sadas en ella, no vemos motivo alguno por qué dicha orden
no haya de ser considerada como "una sentencia a favor
del acusado en virtud de excepción perentoria puesta a la
acusación,"—una excepción perentoria interpuesta por la
corte por iniciativa propia a favor del acusado de confor-
midad con el párrafo 3 o 4 del artículo 153.    Por los fun-
damentos aducidos en la misma orden la cuestión parece es-
tar comprendida en el párrafo 3, si bien hubiera sido más
compatible, tal vez, con la opinión de la corte que fué acom-
pañada a la resolución adoptada para mejor expresar el
motivo de su orden, si según sus términos se hubiera fun-
dado esta última en parte por lo menos, sino en su totali-
dad, en los motivos que se determinan en el párrafo 4.    En-
contramos por analogía un precedente en apoyo de este cri-
terio acerca de la cuestión, al menos en un caso que ha sido
fallado recientemente por la Corte Suprema de Colorado,
*People* v. *Zobel,* marzo de 1913, 180 Pac., 836.    La exposi-
ción de los hechos y los dos primeros párrafos de la opinión
son los siguientes:

"August Zobel fué acusado de hurto de minerales; se dictó sen-
tencia sobreseyendo la causa y El Pueblo interpuso apelación.    El
caso fué revocado y devueltas las actuaciones.

"El Fiscal del quinto distrito judicial formuló una acusación
contra el acusado-apelado, imputándole el delito de hurto de mine-
rales.    También fueron acusados otros dos por hurto de estos mine-
rales, no apareciendo claro si esto se hizo en la misma o en otras'
acusaciones; pero esto no es esencial.    Subsiguientemente, en la
misma corte de distrito en que fueron establecidos estos procedimien-

tos criminales y ante el mismo Juez Presidente se celebró otra causa civil contra estas personas con el objeto de recuperar el valor de los minerales que se alegó habían sido robados y se dictó sentencia contra ellos. Posteriormente se desestimaron por el Fiscal de Distrito los procedimientos criminales seguidos contra los acusados menos Zobel, a virtud de la promesa de presentarse prueba contra Zobel. Luego el Fiscal de distrito presentó una moción para que se señalara el juicio de Zobel, expresando entonces el juez de distrito al Fiscal, que ya él había oído la prueba en el caso civil, de la que aparecía que los acusados contra los cuales se había sobreseído la acusación eran los autores del delito y Zobel solamente un cómplice, y que, como los principales habían sido exonerados por el Fiscal de distrito, Zobel, como cómplice, no podía luego ser juzgado. El juez en efecto, no obstante y en contra de la protesta hecha por el Fiscal de Distrito, y a pesar de la manifestación de este último de que tenía otra prueba de la culpabilidad de Zobel además de la presentada en el juicio del caso civil, sobreseyó la acusación formulada contra Zobel, lo absolvió y dejó libres de responsabilidad a sus fiadores. Con el fin de revisar esta causa, el Fiscal de distrito ha interpuesto apelación en este caso para ante esta corte para que el error sea revisado de acuerdo y por virtud de las prescripciones del artículo 1997, Estatutos Revisados, 1908, el cual en lo que es esencial a cualquier cuestión que esté envuelta, dice lo siguiente: '\* \* \*. Las apelaciones por causa de error procederán a nombre del Estado o de El Pueblo para revisar las resoluciones de las cortes sentenciadoras en cualquier caso criminal sobre cuestiones de ley que surjan durante el juicio, mociones para anular, excepciones perentorias, alegaciones interponiendo obstáculos legales (*plea in bar*), alegaciones para sobreseer (*in abatement*) mociones solicitando la suspensión de la sentencia, o cuando un estatuto es declarado anticonstitucional: \* \* \*. *Disponiéndose,* que nada de lo contenido en esta ley será interpretado de manera tal que el acusado pueda ser expuesto por segunda vez por el mismo delito.'

''Alega el Fiscal de distrito a nombre de El Pueblo que el sobreseimiento de la causa y la absolución del acusado, eran erróneos, puesto que no podía tomarse esa medida sin su consentimiento y en contra de su objeción, mientras que la alegación que se hace por parte del acusado, es que la cuestión presentada no está comprendida en el propósito del artículo del estatuto arriba citado, por la razón de que el sobreseimiento no fué ordenado sobre 'cuestiones de ley que surgen del juicio.'

     \*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

"Garbert, J. (después de expresar los hechos arriba indicados), dijo:

"1. Está bien resuelto en este Estado y en general en este país, que un recurso por causa de error en un caso criminal, no procederá a solicitud del Estado, a menos que esté claramente autorizado por el Estatuto (*People* v. *Raymond,* 18 Colo., 242, 32 Pac., 429, 19 L. R. A., 649; *U. S.* v. *Sanges,* 144 U. S., 310, 12 Sup. Ct., 609, 36 L. Ed, 445); y la primer cuestión que resolveremos es si la sección del estatuto arriba citado es aplicable al caso según los hechos.

"2. Aparece de los autos que el sobreseimiento de la causa se fundó en hechos, cuyo conocimiento obtuvo el Juez fuera de los autos en este caso, los cuales eran que porque los procedimientos contra los otros acusados contra los cuales se imputaba el delito de hurto de los minerales habían sido sobreseidos, y creía la corte según los hechos establecidos en el juicio de la acción civil que ellos eran los principales autores y el acusado solamente un cómplice, no podía este último ser juzgado después de haber sido absueltos los autores. Por tanto, según el efecto legal, la acción de la corte se basó en una alegación de obstáculo legal (*plea in bar*), la cual dicha corte interpuso oralmente a moción propia. Siendo este el caso no es necesario definir el significado de la frase 'cuestiones de ley que surjan en el juicio,' por la razón de que la resolución de la corte fué dictada sobre una alegación de obstáculo legal (*plea in bar*), siendo una de las que el estatuto autoriza de modo específico su revisión en un procedimiento semejante al presente."

El señalamiento de errores presentado en este caso, expresa que la corte de distrito cometió error:

1. Al declarar que los hechos expresados en la acusación enmendada no constituyen un delito público;

2. Al desestimar la acusación.

La verdadera cuestión a discutir, después de haber sido presentadas varias cuestiones por virtud de estas asignaciones de error, ha sido bien expresada por el Fiscal General en la primera frase de su alegato escrito a la que sigue inmediatamente una reseña clara y concisa de las alegaciones específicas formuladas por el apelante dentro de la cues-

tión general, completando así el párrafo inicial de dicho alegato escrito en la siguiente forma:

"En este caso se suscita la cuestión general del consentimiento o acquiescencia de parte de un agente del Gobierno como defensa para una persecución criminal. El apelante, El Pueblo de Puerto Rico, sostiene:

"1. Que la acusación expone hechos constitutivos de una violación criminal por el acusado de las leyes de Rentas Internas, dejando de pagar las contribuciones sobre ciertos espíritus alcohólicos producidos por él.

"2. Que el acusado es individualmente responsable por el fraude deliberado que ha cometido, y que su culpabilidad es personal y no está afectada por la responsabilidad o criminalidad de los actos de otro.

"3. Que el acusado, no está exento de que haya sido inducido por otra persona, suponiendo que hubiese sido instigado.

"4. Que los actos del agente Vázquez no envuelven un estímulo o instigación para cometer el delito previamente proyectado por el acusado.

"5. Que estos actos están justificados por una sana política pública.

"6. Que el delito que se imputa es contrario al público, por consiguiente, ningún miembro del público, sea agente del Gobierno o no, tiene poder por consentimiento, para no hacer delito lo que es delito.

"7. Que estos son principios fundamentales de derecho criminal y están más que sostenidos por autoridades."

No es necesario para la resolución de la cuestión principal que aquí se presenta, que sean resueltas las cuestiones que han sido planteadas de acuerdo con los incisos 3 y 5. La acusación, según su faz, desde su principio hasta el fin, contradice, niega y refuta de manera clara la teoría de que el agente de rentas internas persuadió, alentó, solicitó, instigó o indujo al acusado en forma, medio o manera alguna a la comisión de cualquier acto criminal; y no habiéndose sugerido de modo alguno que hubiera tratado el agente de Rentas Internas de hacer incurrir a un hombre honrado y ciudadano obediente a la ley a la comisión de un delito, es decir, sin que se probase en el sentido en que las cortes lo

censuran y condenan que se hubiera preparado una "celada," es claro que hasta ahora, en lo que podemos deducir de los autos de este caso, no tenemos necesidad de justificar ningún acto ejecutado por Vázquez por interés de la política pública. Todo lo que dijéramos sobre cualquiera de estas dos cuestiones sería simplemente supérfluo y por tanto nos abstenemos de emitir opinión alguna sobre este extremo.

La actitud asumida por el apelante con respecto a todas las demás proposiciones que han sido enumeradas en el párrafo que acaba de citarse está ampliamente sostenida por los casos citados que han sido hábilmente discutidos en el alegato presentado por el Fiscal General. No hay necesidad de que citemos estas numerosas autoridades. La mayoría de las mismas, así como uno o dos casos adicionales pueden verse en la nota del caso *Kemp* v. *United States*, 51 L. R. A. (Nueva Serie), 825, y en las anteriores notas que en la misma se citan y adicionan.

Abrigamos la mayor confianza en la habilidad del juez de distrito para aplicar la ley según ha sido enunciada en estas decisiones y en las demás que puedan someterse a su consideración, a los hechos según puedan desarrollarse en el juicio. No participamos del temor del abogado del acusado de que pudiera ser inducida a error la corte inferior por cualquier expresión supérflua (*obiter dicta*) de cualquier opinión, por extensa que ésta sea, basada en los hechos alegados en la acusación que son los únicos que hasta ahora están envueltos en este caso. Teniendo en cuenta, sin embargo, la prolongada discusión sobre cuestiones incidentales que se hizo necesaria debido a la formalidad y modo plausible en que tales cuestiones han sido presentadas a nuestra consideración,—habiendo francamente admitido el abogado del acusado en su informe oral el hecho de que si se aislara y fuera considerada por sí sola la acusación, se vería que en la misma se imputa la comisión de un delito y está substancialmente libre de impugnación, habiendo renunciado a la discusión sobre este aspecto de la cuestión ya oralmente

o por escrito, y hecho referencia solamente dichos abogados a las cuestiones preliminares a que ya se ha hecho alusión— y más para evitar la prolongación de esta opinión fuera de los límites razonables, que por la posibilidad remota de una influencia indebida, o como sugiere el abogado ''que domine'' en la resolución de casos que todavía han de fallarse, estamos satisfechos en terminar sin hacer ninguna discusión o análisis de los casos a que se ha hecho referencia como aplicables a los hechos expresados en la acusación que ha sido presentada en este caso.

La sección 3 de la Ley de Arbitrios de marzo 9, 1905, (Leyes de 1905, p. 256) según ha sido enmendada por la Ley No. 55 de marzo 9, 1911, página 180, y la Ley No. 112 de marzo 13, 1913, p. 163, dispone lo siguiente:

''Sección 3.—Se impondrá, cobrará y pagará:

'' (1) Sobre todo líquido espirituoso destilado, fabricado en Puerto Rico   *   *   *   un impuesto de cincuenta centavos por cada litro o fracción de litro   *   *   *.

    *      *      *      *      *      *      *

'' (12) Toda persona que faltare al pago de los impuestos, según se especifican en este artículo, y en el tiempo que más adelante se dispone en la presente, excepción hecha de lo que en contrario se disponga por esta ley, será culpable de delito menos grave (*misdemeanor*) y por la primera falta que así cometiere será multada   *   *   *.

La fecha a que se hace referencia ''en el tiempo que más adelante se dispone'' está determinada en la sección 6ª. de la Ley de Arbitrios como ha sido enmendada por la Ley No. 55 de marzo 9, 1911, arriba citada, a saber:

''El impuesto pesará sobre los espíritus alcohólicos, tan pronto como sean separados, en estado de pureza o impureza, mediante destilación u otro procedimiento de evaporación, de cualquiera sustancia, ya sea fermentada o nó; pero el pago se efectuará antes de que dichos espíritus alcohólicos salgan de la fábrica, salvo lo que en contrario se disponga por esta ley, y en la forma que prescriba por reglamento, el Tesorero de Puerto Rico;''

Las secciones 21, 22 y 23 de los Reglamentos del Tesoro, que se acompañan a la acusación y se hacen parte de la misma, son los siguientes:

"Sección 21.—El impuesto sobre espíritus destilados se pagará mediante la compra y fijación de los correspondientes sellos de Rentas Internas a la factura. Los sellos y libros de facturas se consiguirán mediante la correspondiente solicitud al Colector de Rentas Internas del distrito donde esté situada la destilería.

"Sección 22.—Cuando un destilador deseare sacar espíritus destilados para el consumo, debe proveerse, con anticipación, de la cantidad suficiente de sellos de Rentas Internas y envases para recibir la cantidad de alcohol que deseare sacar. Llenará entonces la factura, haciendo constar la cantidad de espíritus que piensa sacar, grado del mismo y fecha del despacho. El talón de dicha factura será también llenado y ambos serán firmados por el destilador. El agente de Rentas Internas del distrito o el agente especial encargado de la destilería, revisará la factura y talón y después de cerciorarse del pago completo del impuesto, de la cancelación de los sellos y corrección de la factura y talón, aprobará los mismos, firmándolos, procediendo entonces a la entrega del espíritu destilado.

"Sección 23.—Los sellos de Rentas Internas adheridos en pago del impuesto sobre el alcohol, serán cancelados por el destilador. Será obligación de todo destilador el proveerse de un timbre para cancelar, el cual, al ser aplicado sobre los sellos de Rentas Internas, dejará claramente impreso el nombre del destilador, local de la destilería y la fecha de la cancelación de los sellos. Después de cancelar en debida forma los sellos adheridos a la factura para espíritus destilados, el destilador separará dicha factura del talón, y al separarla lo hará de manera tal que una mitad de cada sello con su número de serie completo quede adherido a la factura y la otra mitad al talón. Las facturas antedichas serán enviadas por el destilador al Tesorero de Puerto Rico en el mismo día en que se haga la factura y se efectúe el despacho de alcohol."

Interpretada razonable y lógicamente a la luz del estatuto y de los reglamentos arriba citados la acusación enmendada en este caso, se verá claramente que expresa hechos suficientes constitutivos de un delito, y no contiene nada que de ser cierto pudiera servir de excusa o justificación del delito o presentara algún obstáculo legal a la causa.

Por tanto, cualquiera que haya sido la intención de la corte inferior en la orden que ha sido excepcionada por el apelante,—o ya sea como en ella se expresa, el desestimar la acusación por no constituir delito los hechos alegados en la misma, o dictar sentencia a favor del acusado a virtud de una excepción perentoria interpuesta en efecto legal por la corte a iniciativa propia, ya por la misma razón así expresada, o porque la acusación contenía "materia que de ser cierta constituiría una excusa o justificación legal del delito imputado o cualquier otro impedimento legal para la causa,"—la moción para desestimar la apelación debe ser denegada, la orden apelada revocada, y la causa devuelta para ulteriores procedimientos que no sean incompatibles con esta opinión.

> *Revocada la resolución apelada, denegada la moción para que se desestime la apelación y devuelto el caso a la corte inferior para ulteriores procedimientos, de acuerdo con los principios enunciados en la opinión.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados Wolf, del Toro y Aldrey.